[No. 45594. En Banc. December 21, 1978.]

CERTIFICATION FROM THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
IN
WILLIAM L. HART, *Appellee,* v. PEOPLES NATIONAL
BANK OF WASHINGTON, *Appellant.*

WILLIAM L. HART, *Appellee,* v. JAMES E. SMITH,
*Appellant.*

*Barbara Allen Babcock, Assistant Attorney General of the United States, Ronald R. Glancz, Department of Justice, Sax & MacIver, John C. Coart,* and *James P. Donohue,* for appellants.

*Slade Gorton, Attorney General,* and *Richard A. Heath, Assistant,* for appellee.

*Rex B. Stratton* and *Mark M. Hough* on behalf of the Community Banks of Washington, amici curiae.

ROSELLINI, J.—Do the words "city or town" as used in RCW 30.40.020 include unincorporated communities such as Basin City in Franklin County, Washington?

The United States Comptroller of the Currency approved an application by the Peoples National Bank of Seattle, Washington, to relocate in Basin City, an unincorporated area, a branch which it had established at Mesa, an incorporated town in the same county. His action was challenged by the Washington State Supervisor of Banking, who sought a declaratory judgment that the approved application was illegal and an order enjoining the relocation. Judge Morrell Sharp of the Federal District Court held that branching outside the county of a bank's home office is

restricted to incorporated cities and towns and granted the relief requested. Upon the appeal to the Court of Appeals by the Comptroller and the bank, the question, being one of statutory interpretation, was certified to this court pursuant to RCW 2.60.

RCW 30.40.020 provides:

Branches authorized—Restrictions. A bank or trust company having a paid–in capital of not less than five hundred thousand dollars may, with the approval of the supervisor, establish and operate branches in any city or town within the state. A bank or trust company having a paid–in capital of not less than two hundred thousand dollars may, with the approval of the supervisor, establish and operate branches within the limits of the county in which its principal place of business is located. . . .

The aggregate paid–in capital stock of every bank or trust company operating branches shall at no time be less than the aggregate of the minimum capital required by law for the establishment of an equal number of banks or trust companies in the cities or towns wherein the principal office or place of business of such bank or trust company and its branches are located.

No bank or trust company shall establish or operate any branch . . . in any city or town outside the city or town in which its principal place of business is located in which any bank, trust company or national banking association regularly transacts a banking or trust business, except by taking over or acquiring an existing bank, trust company or national banking association or the branch of any bank, trust company or national banking association operating in such city or town. [1973 1st ex.s. c 53 § 35; 1969 c 136 § 6; 1955 c 33 § 30.40.020. Prior: 1933 c 42 § 5; RRS § 3231-1.]

It appears that from 1917 until 1933, the date of the original enactment of this section, there was no law in this state permitting banks to establish branches. Because of the prevalence of bank failures at that time, corrective regulation of this business was evidently viewed as a necessity. Financial stability of banking institutions was a primary goal.

It also appears that legislative bodies throughout the United States have placed rather rigid restrictions on branch banking. As late as 1962, only 16 states and the District of Columbia permitted branch banking statewide, while 14 permitted some lesser degree of branching. *See* J. Wysocki, *Branch Banking—Restrictive State Laws Considered in Light of the Public Interest—Extension of National Power over Banking*, 38 Notre Dame Lawyer 315, 320 (1963).

Washington's is among the more liberal legislatures, permitting banks to branch outside their home counties, as well as within those counties. However, the statute places greater restrictions upon branching activities outside the home county than upon such activities within the county, requiring a greater capitalization for this type of expansion and permitting it only in cities and towns, and then only by the acquisition of an existing bank or branch if there is a bank already serving the city or town. Branching within the home county is not confined to cities and towns, and the strict requirements of the final paragraph of the section do not apply to branches established outside cities or towns.

That banks may be established in localities not having the status of a city or town is clear from a reading of RCW 30.08.010, providing for the incorporation of banks in cities, villages or communities having a population of less than 25,000. Since branching within a bank's home county is not restricted to cities or towns, it was the evident legislative intent to allow the establishment of branches in unincorporated communities within the county, and the Supervisor, we are told, has consistently permitted such branching within the bank's home county. However, he has taken the view that branching outside such county can be done only in incorporated cities and towns. In accordance with 12 U.S.C. § 36, authorizing the establishment of national banks and branches of national banks but requiring conformance with state laws, the Comptroller has also followed this practice, prior to his approval of the application in the

present case. The practice has resulted in a banking structure in this state which it appears would be seriously and adversely affected if the Supervisor's interpretation is invalidated.

The interpretation of the Supervisor was fortified by an Attorney General's opinion issued in 1955 (Attorney General Opinion 55–57 No. 2) in which it was taken for granted that the words city and town as used in this section referred to municipal corporations. The United States Supreme Court has also taken it for granted that the statute refers to incorporated cities and towns. *See United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 609–10, 41 L. Ed. 2d 978, 94 S. Ct. 2856 (1974).

Also supportive of the Supervisor's interpretation is the fact that the legislature amended this section in 1969 (Laws of 1969, ch. 136, § 6) and again in 1973 (Laws of 1973, 1st Ex. Sess., ch. 53, § 35) and left these provisions unchanged.

We said in *Bradley v. Department of Labor & Indus.*, 52 Wn.2d 780, 786–87, 329 P.2d 196 (1958):

> Where a statute is ambiguous, construction placed upon it by the officer or department charged with its administration is not binding on the courts but is entitled to considerable weight in determining the legislative intention, and the persuasive force of such interpretation is strengthened when the legislature, by its failure to amend or by amending some other particular without repudiating the administrative construction, silently acquiesces in the administrative interpretation. *White v. State*, 49 Wn. (2d) 716, 306 P. (2d) 230 [1957].

*In accord: Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 536 P.2d 157 (1975).

The interpretation need not necessarily be promulgated in the form of a rule. Practices which reflect an administrator's understanding of his statutory duties have great weight in determining legislative intent. 2A C. Sands, *Sutherland on Statutory Construction* § 49.05 (4th ed. 1973).

Nevertheless, the appellant urges that the court should assign to the word town as used in this statute, what they

contend is its common and ordinary meaning. Numerous cases are cited in which courts, construing various statutes, have found the word to have been used in its popular sense, meaning an aggregation of inhabitants and habitations. We agree that the statute is indeed open to that interpretation. However, the word has different meanings as used in different statutes. 87 C.J.S. *Towns* § 1 *et seq.* (1954); 56 Am. Jur. 2d *Municipal Corporations* § 7 (1971).

While the legislature has provided extensively for the incorporation of towns and the conduct of their governmental affairs in RCW 35.27, it has also recognized the existence within this state of unincorporated towns. *See* RCW 58.11.010 (providing for the vacation of plats in unincorporated towns) and RCW 58.28.210–.520 (pertaining to unincorporated towns on United States lands). On the other hand, the people of this state, in framing their constitution, used the word town repeatedly to designate an incorporated town. The phrase "county, city, town or other municipal corporation" is found in Const. art. 8, §§ 6–7, and Const. art. 11, §§ 12, 14, 15. *See also* Const. art. 11, § 10, in which the assumption is implicit that a town is an organized community.

The legislature has in other statutes used the word town with the obvious meaning of "incorporated town," although the qualifying adjective has been omitted. *See* RCW 17.04-.160, prescribing duties with respect to weed control; RCW 79.16.410, relating to street improvement on state lands; and RCW 63.36.010, relating to unclaimed property. In all of these statutes, it is obviously assumed that the town in question has corporate powers and officials capable of performing the particular functions in question. Our examination of the statutes generally discloses that when the legislature and the people have used the word "town," without designating whether they refer to an incorporated or unincorporated town, the reference is to an incorporated town, and that when they refer to an unincorporated town, they expressly designate it as such. That the word, as used by our legislature, most often refers to an incorporated

town is not surprising, when it is observed that extensive provision is made for the organization of such communities and that, without some form of organization, it is impossible for a community to function as a political entity.

As Webster's Third New International Dictionary, an authority cited by both parties, attests, one of the common meanings of the word town is incorporated town. We bear in mind that our goal is to ascertain the legislative intent, and the legislature is not conclusively presumed to have used the word in its most popular sense.

The legislature was concerned about financial stability of banks, and it was cautious in allowing branching, as evidenced by the capitalization requirements and the restrictions upon branches outside a bank's home county. The provision denying a right to establish a branch at all in a city or town outside the home county which is already served by a bank, except by taking over an existing bank or branch, presents a difficult if not impossible problem of administration if the city or town has no boundaries, as is the case with unincorporated towns. Thus it is not unreasonable to conclude that the legislature intended to use the word town in its narrower sense in this instance.

If a statute is susceptible to two interpretations, that interpretation which best advances the overall legislative purpose should be adopted. *Anderson v. Morris*, 87 Wn.2d 706, 558 P.2d 155 (1976).

Since the language of the statute is reasonably open to the interpretation under which the Supervisor has functioned for a period of more than 30 years, since that interpretation advances the statutory purpose,[1] and since the legislature, having had many years in which to observe the

---

[1] We are, of course, not concerned with the wisdom of the statute. Restrictions such as those contained in RCW 30.40 have been subjected to criticism as inappropriate to accomplish the legislative purpose of insuring financial stability and tending to foster monopolies, *see* J. Wysocki, *Branch Banking—Restrictive State Laws Considered in Light of the Public Interest—Extension of National Power over Banking*, 38 Notre Dame Lawyer 315 (1963) and an article by D. Baker, *Bank Expansion: Geographic Barriers*, 91 Banking L.J. 707 (1974).

administration of the law, has addressed its attention to the section in question and has not repudiated the Supervisor's interpretation, we conclude that it was the legislative intent that branching outside a bank's home county should be restricted to incorporated cities and towns.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.