[No. 45875. En Banc. August 2, 1979.]

WASHINGTON BANKERS ASSOCIATION, *Appellant,* v.
WASHINGTON MUTUAL SAVINGS BANK,
*Respondent.*

*Davis, Wright, Todd, Riese & Jones,* by *Bradley C. Diggs,* for appellant.

*Foster, Pepper & Riviera, Louis H. Pepper, Richard E. Keefe,* and *Jennifer L. Keefer,* for respondent.

BRACHTENBACH, J.—The issue here is whether state chartered mutual savings banks are authorized to allow depositors to withdraw funds from savings accounts by use of negotiable orders of withdrawal.

The plaintiff is Washington Bankers Association (WBA), a nonprofit organization whose membership consists of all commercial banks in the state of Washington. Defendant is Washington Mutual Savings Bank, a mutual savings bank chartered under RCW Title 32.

WBA sued to enjoin Washington Mutual from using accounts from which depositors could make withdrawals by use of a negotiable order of withdrawal. The trial court held for Washington Mutual. We affirm.

The type of account in controversy is known as a NOW account, an acronym derived from the terms Negotiable Order of Withdrawal. It is not statutorily defined or mentioned as such. In operation, a NOW account is a noninterest bearing, no passbook savings account which allows withdrawals by negotiable orders of withdrawal. It is usually coupled with an automatic transfer savings account (ATA) which does bear interest. Funds in the automatic transfer account draw interest until transferred to the NOW account to cover withdrawals. *See generally* Pfeiler, *NOW Accounts: A Legal Prognosis,* 1977 Bank Counsel 375 (Practicing Law Institute); Riordan, *Negotiable Orders of Withdrawal,* 30 Business Lawyer 151 (1974); Note, *The Negotiable Order of Withdrawal (NOW) Account: "Checking Accounts" for Savings Banks?* 14 B.C. Ind. & Com. Law Rev. 471 (1973).

A NOW account's scheme of fund transfers seems designed to avoid the sanctions of 12 U.S.C. § 1832 (1979). That statute, which is a provision of the Federal Deposit Insurance Corporation Act, subjects any depository institution outside of New England (including a mutual savings bank) to a $1,000 fine per violation for allowing account owners to make withdrawals by negotiable or transferable instruments for the purpose of making transfers to third parties from "a deposit or account on which interest or dividends are paid."

Several definitions may be relevant. A "checking account" has no statutory definition, but commonly refers to a demand deposit account, bearing no interest, against

which negotiable checks are drawn. In Washington, only commercial banks offer demand accounts.

A "savings account" is an account over which the bank must maintain a right to require specified notice prior to withdrawal. In the case of mutuals, they may require up to 6 months' notice prior to withdrawal. RCW 32.12.020(1). What legal effect this potential notice requirement has on negotiability is not before us.

An "automatic funds transfer" (AFT) savings account is used by commercial banks in a manner identical to automatic transfer accounts used by mutuals except the transfer is to a checking account rather than to a NOW savings account. By current federal regulation, both commercial banks and mutuals are limited to paying 5 percent interest on AFT and ATA accounts compared to a mutual's right to pay 5 1/4 percent interest on regular savings accounts. Effective November 1, 1978, federal regulations were amended to permit commercial banks to utilize AFT accounts in the manner described above. Washington Mutual thereupon offered its NOW account.

The trial court entered extensive findings of fact. The ones to which error is assigned are:

4. Some or all of the methods of withdrawal of funds from passbook and statement savings accounts in Washington Mutual and other mutual savings banks in this state perform the same or a similar function as checking account services offered by commercial banks.

15. The distinction between presently existing means of accessing savings accounts and NOW accounts is one without a difference. The increasing overlap in services offered by mutual savings banks and commercial banks is obliterating the traditional differences between savings banks and commercial banks. Plaintiff has not made any showing nor has anyone given a reason to show that this trend is injurious to the public in any way.

16. NOW accounts appear to provide the public with additional conveniences for customers and additional competition which most jurisdictions have found adheres to the public advantage.

17. The "business of a savings bank" must be construed in light of the times and developments in the savings bank business and related businesses. New methods of accessing accounts provide additional convenience to customers, provide means for banks to remain competitive, to utilize the most recent technical advances, and are thus properly part of "the business of a savings bank".

18. The legislative history in the state of Washington with respect to the right of a savings bank to offer checking services to its customers is a history that is criss–crossed with confusing and conflicting indications by the Legislature. Much of this legislative history is either inapposite or unhelpful in construing the relevant statutes.

19. While the legislative history shows a failure by the Legislature to pass specific authority for demand deposits for mutual savings banks in 1967 and 1977, there is no legislative history showing defeat of a bill specifically authorizing NOW accounts.

WBA assigns error to these findings, but does not challenge the sufficiency of the evidence to support them. Rather they attack the conclusions, factual and legal, to be drawn therefrom.

While WBA discusses at length various historical and competitive differences between commercial and mutual banks, we view the question as solely one of statutory interpretation. The question is, has the legislature by the granting of express or implied powers, given mutual savings banks the power to allow withdrawals from a savings account by negotiable orders of withdrawal?

 Banks have those powers which are expressly conferred by statute or such as may be fairly implied from those expressly given. *Ulmer v. Fulton,* 129 Ohio St. 323, 195 N.E. 557 (1935).

The powers of mutual savings banks are contained in RCW Title 32. General powers which are relevant here are granted by RCW 32.08.140:

Every mutual savings bank incorporated under this title shall have, subject to the restrictions and limitations contained in this title, the following powers:

(1) To receive deposits of money . '. . and to exercise by its board of trustees or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of a savings bank.

. . .

(4) To pay depositors as hereinafter provided . . .

Specific powers relating to withdrawals are set forth in RCW 32.12. Of relevance here is RCW 32.12.020:

The sums deposited with any savings bank, together with any dividends or interest credited thereto, shall be repaid to the depositors thereof respectively, or to their legal representatives, after demand in such manner, and at such times, and under such regulations, as the board of trustees shall prescribe, subject to the provisions of this section and RCW 32.12.030.

RCW 32.12.030 referenced immediately above refers to accounts for minors, accounts held in trust or joint tenancy accounts and is not pertinent here.

RCW 32.12.020(2) states:

(2) Except as provided in subdivisions (3), (4), and (5) of this section the savings bank shall not pay any dividend, or interest, or deposit, or portion thereof, or any check drawn upon it by a depositor unless the certificate of deposit is produced, or the passbook of the depositor is produced and the proper entry is made therein, at the time of the payment.

This subdivision has three exceptions by reference to subdivisions (3), (4) and (5). Subdivisions (3) and (4) refer to lost passbooks or certificates and are not relevant here. Subdivision (5) allows a ledger record or account in lieu of a passbook and is significant.

■ We note the reference in RCW 32.12.020(2) to a check drawn by the depositor. That language has appeared in the statute since mutuals were authorized in 1915, Laws of 1915, ch. 175, § 18. WBA argues that this cannot authorize a negotiable instrument like a NOW because of the requirement that the passbook must accompany the check. However, the requirement that the withdrawal be accompanied by a passbook was removed by Laws of 1963, ch. 176, § 3, p. 865, at 867, which authorizes a ledger or record

account in lieu of the passbook. WBA argues that the reference to checks in the original act and the 1963 amendment could not authorize NOW accounts because it would be inconsistent with the narrow thrift functions of mutuals. However, such a restriction is nowhere found in the statute.

WBA argues further that the 1915 use of the word "check" is not the equivalent of nor intended to include a current day's negotiable order of withdrawal. It claims such an interpretation would be inconsistent with the 1915 act read as a whole. WBA asserts that the legislature had in mind some type of nonnegotiable instrument when referring to withdrawal by check. Finally, it points to the Uniform Commercial Code, RCW 62A.3–104(3), which states that a check may be negotiable or nonnegotiable. However, in 1915 the Code was not in effect. Rather, the Negotiable Instruments Act provided the pertinent definitions. A check was defined as a bill of exchange drawn on a bank, payable on demand. Rem. Rev. Stat. § 3575. The definition of a bill of exchange, Rem. Rev. Stat. § 3516, provided all of the elements of negotiability required by Rem. Rev. Stat. § 3392. Thus there is a substantial argument that the reference in the 1915 mutual savings bank to "check" referred to a negotiable instrument.

The trial court concluded as a matter of law:

> RCW 32.12.020, which provides that a savings bank may not pay "any check drawn upon it by a depositor" unless the passbook is presented, expresses a clear anticipation by the legislature that one possible means of repaying a deposit to a customer is by means of a check drawn on the savings bank by the depositor.

We agree that the above construction of the statute does authorize NOW accounts.

Our conclusion is buttressed by an analysis of the incidental powers granted to mutuals. RCW 32.08.140(1) gives "all such incidental powers as shall be necessary to carry on the business of a savings bank." An activity necessary to carry on the bank's business has been defined as one which is "convenient or useful in connection with performance of

the bank's established activities pursuant to its express powers." *M & M Leasing Corp. v. Seattle–First Nat'l Bank,* 563 F.2d 1377, 1382 (9th Cir. 1977). Likewise it has been defined as such powers as are necessary or usual and convenient for the attainment of purposes of the creation of a bank. *Bank of California v. Portland,* 157 Ore. 203, 208, 69 P.2d 273, 115 A.L.R. 676 (1937). We adopt those definitions as appropriate.

The issue then is whether the offering of NOW accounts is necessary or usual and convenient, or convenient and useful to the performance of the mutual bank's express power under RCW 32.08.140 and RCW 32.12.020 to repay its depositors.

RCW 32.12.020 provides that savings shall be repaid only "to the depositors thereof" or "their legal representatives." WBA contends this language permits savings banks to repay only depositors, and not to make payments to third parties via NOWs. Title 32 must be read as a whole and the other provisions discussed above negate such a narrow result. *Alderwood Water Dist. v. Pope & Talbot, Inc.,* 62 Wn.2d 319, 382 P.2d 639 (1963). Also WBA's position seems less than persuasive when the commercial banks' own governing statute, under which they operate AFT accounts, has the same restrictive language. *See* RCW 30.20.060.

The record shows that various methods of withdrawal, that is accessing the depositors' accounts, are used by mutuals. They include: travelers' checks, checks or money orders payable to third parties, the wiring of funds to a third party, electronic withdrawals using an "exchange card", telephonic orders to pay a third party, written pre-authorization of payment, debit and credit transactions between Washington Mutual and commercial bank trust departments where no drafts change hands, mere book entries debiting a savings account and crediting another account or loan charge with Washington Mutual and transfer of multiple payments via computer tape to the credit of a third party such as a utility.

The NOW account is another method of withdrawal which is convenient or useful in connection with the mutual's express power to repay depositors and within its implied powers. It is within the manner, time and under such regulations prescribed by the board of trustees as authorized by RCW 32.12.020. The trial court specifically found that new methods of accessing accounts are properly part of the business of a savings bank. We agree.

Our result accords with the holdings of the majority of other jurisdictions which have considered the same question. While none of the cases is exactly on all fours because of statutory differences, they do indicate a judicial tendency to allow NOW accounts. In *Pennsylvania Bankers Ass'n v. Secretary of Banking,* 481 Pa. 332, 392 A.2d 1319 (1978), the court upheld a regulation issued by the state department of banking authorizing NOW accounts. The court so held despite arguments by the bankers' association that such authority distorted the savings purpose of savings banks, that there was a legislative intent to deny such power to savings banks, that it provided an unjustified competitive edge over commercial banks, and that only the legislature could authorize such accounts. At page 1321 the court said:

> All parties agree that the Banking Code of 1965 does not expressly prohibit savings banks from offering NOW accounts. . . . And all agree that the Banking Code places few restrictions on savings banks insofar as the withdrawal of deposits is concerned, leaving it to the individual savings banks to provide for the terms of withdrawal in their articles or by–laws . . .

In *Wisconsin Bankers Ass'n v. Mutual Sav. & Loan Ass'n,* 275 N.W.2d 130 (Wis. Ct. App. 1978), the court upheld the legality of a savings and loan association's NOW accounts. The court so ruled despite a bankers association's argument that the use of NOW accounts violated a Wisconsin statute requiring savings and loans to "pay the saver." The court said that the concept of assignability of choses in action, the debtor–creditor relationship between

the savings and loan association and its depositors, and the legislature's announced policy of business competition led to the conclusion that NOW accounts comply with the "pay the saver" requirement.

In *Consumer Sav. Bank v. Commissioner of Banks,* 361 Mass. 717, 282 N.E.2d 416 (1972), the court ordered the banking commissioner to allow savings banks to utilize NOW accounts. The statute authorized withdrawals "in such manner as the bylaws direct", subject to certain other provisions of the statute. The bylaws authorized withdrawals by presentation of the passbook or other written instrument. The court held that the negotiable order of withdrawal was a written instrument permitted by the bylaws, noting that the statute left the establishment of methods of withdrawal to the individual banks.

In *Hudson County Nat'l Bank v. Provident Institution for Sav. In Jersey City,* 44 N.J. 282, 208 A.2d 409 (1965), the court held that a savings bank could accept deposits subject to withdrawal by check. The court relied upon statutory language authorizing incidental powers which shall be necessary or convenient to carry on the business of the savings bank and to repay deposits according to the usual custom of savings banks. That language, coupled with administrative acquiescence, was sufficient to authorize such accounts. The court emphasized that the matter was wholly one of statutory regulation and that if the legislature wanted to ban such accounts it could have so stated in the statute.

In *Savings Bank of Baltimore v. Bank Comm'r,* 248 Md. 461, 475, 237 A.2d 45 (1968), the court said:

> If, as would seem to be conceded, a depositor of the Bank, on making a withdrawal, has the option of requesting cash, or a treasurer's check, or of purchasing a money order, it seems abundantly clear to us that according him a fourth option of drawing a check on his own account, whether or not he presents his passbook, is a distinction without a difference.

Likewise, *Florida Bankers Ass'n v. Leon County Teachers Credit Union*, 359 So. 2d 886, 890 (Fla. Dist. Ct. App. 1978), authorized share drafts on credit union accounts pointing out that the statute governing credit unions did not require them to employ any particular method of permitting withdrawals and that no statute forbids share drafts.

There are two cases to the contrary. In *New York State Bankers Ass'n v. Albright,* 38 N.Y.2d 430, 436, 343 N.E.2d 735, 381 N.Y.S.2d 17 (1975), the court relied heavily upon the fact that the legislature had repeatedly refused to enact explicit statutory authorization for checking accounts by savings banks. The other case is *Androscoggin County Sav. Bank v. Campbell,* 282 A.2d 858 (Me. 1971). That case relied upon the fact that a 1917 Attorney General's opinion said that mutuals did not have checking account powers. Given that interpretation and the failure of the legislature to change it when amending the mutuals law, the court found no implied power for NOW accounts. We do not find either case persuasive.

Finally, WBA calls our attention to the recent decision of *American Bankers Ass'n v. Connell,* No. 78–1337 (D.C. Cir., filed April 20, 1979) (per curiam) (unpublished). There, the court ruled in a brief opinion that federal banking statutes did not authorize regulations which allowed "automatic fund transfers" for federal reserve member banks, "remote service units" for federal saving and loan associations, and "share drafts" for federal credit unions. The court ordered that the regulations be set aside, but delayed the effectiveness of its judgment until January 1, 1980, in expectation of federal congressional action.

■ *Connell* does not concern mutual savings banks, which until very recently had no federal charter. *See* 12 U.S.C. § 1831(c) (1979); H. R. Rep. No. 95–1383, 95th Cong., 2d Sess. 29, *reprinted in* [1978] U.S. Code Cong. & Ad. News 9273, 9301. It construes federal statutes and legislative history that specifically forbid the challenged activities. *See* 12 U.S.C. §§ 371a, 1464(b)(1), 1751–90 (1976).

Moreover, because it is an unpublished opinion, *Connell* has no precedential value. D.C. Cir. R. 8(f); *cf. State v. Fitzpatrick,* 5 Wn. App. 661, 668, 491 P.2d 262 (1971) (unpublished opinions of Washington Court of Appeals have no precedential value). We do not find *Connell* persuasive.

The judgment is affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.