G. W. MUTSCHLER, Supervisor, Division of Banking, Department of General Administration, State of Washington, Plaintiff-Appellee,

v.

PEOPLES NATIONAL BANK OF WASHINGTON, a national banking association, and James E. Smith, Comptroller of the Currency of the United States, Defendants-Appellants.

Nos. 76–2042, 76–2182.

United States Court of Appeals, Ninth Circuit.

Oct. 24, 1979.

John C. Coart, Seattle, Wash., argued for defendants-appellants.

Richard A. Heath, Asst. Atty. Gen., Olympia, Wash., for plaintiff-appellee.

Before BROWNING and TANG, Circuit Judges, and TAYLOR *, District Judge.

PER CURIAM:

William L. Hart, as Supervisor of the Division of Banking for the State of Washington, brought this action against appellants, the Federal Comptroller of the Currency and Peoples National Bank of Washington seeking a determination that the Comptroller's approval of the Bank's application to relocate one of its branches was unlawful under Washington state law. The district court granted appellee's motion for summary judgment and appellants appealed from the judgment. We affirm.

In January of 1975, Peoples National Bank of Washington (Bank), a national banking association with its principal offices in Seattle, King County, Washington, submitted an application to the Comptroller of the Currency of the United States (Comptroller) for permission to move its branch bank from Mesa, Franklin County, Washington to the unincorporated community of Basin City which is also in Franklin County. The record discloses that Basin City had become the social and commercial center of the northwestern part of Franklin County and would continue to experience significant growth in the future. The Bank claimed the branch relocation would offer services to more people in the surrounding area as well as serve its existing customers.

Appellee, in his capacity as Supervisor of the Division of Banking for the State of Washington (Supervisor), registered an objection to the application on the ground that under Washington law a bank having its principal office in one county could not establish a branch in an unincorporated area of another county. Despite the Supervisor's objection, the Acting Comptroller approved the application and the Bank opened the Basin City branch in June, 1975.

Subsequently, the Supervisor filed this action seeking a declaration that the Comptroller's approval of the Bank's application was contrary to the provisions of 12 U.S.C. § 36(c) and the provisions of § 30.40.020 of the Revised Code of Washington, and requesting a permanent injunction against the relocation of said branch to Basin City. On cross-motions for summary judgment, the district court entered judgment in favor of the Supervisor. The court held that the Comptroller does not have plenary power under 12 U.S.C. § 36(e) to approve relocation of national bank branches; that Washington law applied to this situation under 12 U.S.C. § 36(c); and that Washington law precluded the Bank from moving the branch to Basin City.

In challenging the district court's granting of the Supervisor's motion, the Bank

* For the District of Idaho, sitting by designation.

and the Comptroller raise three substantive issues. First, the question whether 12 U.S.C. § 36(c), which incorporates applicable state law restrictions on the establishment and operation of new branch banks, applies to the *relocation* of a branch of a national bank. Secondly, even if 12 U.S.C. § 36(c) does apply to such relocation, appellants contend that the district court should have construed the applicable Washington state law (RCW 30.40.020) to allow branching in unincorporated areas as well as incorporated areas. Thirdly, appellants argue that even if the district court was correct in its construction of RCW 30.40.020, it erred in holding as a matter of law that the Bank could not relocate the branch pursuant to the state statute (RCW 32.04.030) since it allows mutual savings banks to establish branches in any county of the state.

I

Appellants argue the move of the Bank's branch from Mesa to Basin City was a "relocation" as opposed to the establishment of a new branch, and 12 U.S.C. § 36(e) empowers the Comptroller to authorize branch relocations independently of 12 U.S.C. § 36(c). On reviewing the language of §§ 36(c) and 36(e), the legislative history of the National Bank Act, and the applicable rules of statutory construction, we are of the opinion that appellants' position is untenable.

■ It is a well settled rule of statutory construction that a statute must be read not only to give effect to all of its parts, *Washington Market Company v. Hoffman*, 101 U.S. 112, 25 L.Ed. 782 (1879), but also so as to implement the broad national policy of the legislation. *National Woodwork Manufacturers v. NLRB*, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). In this context, sections of a statute should be read as consistent rather than conflicting. *Helvering v. Credit Alliance Corporation*, 316 U.S. 107, 62 S.Ct. 989, 86 L.Ed. 1307 (1942). Title 12 U.S.C. § 36 enumerates certain conditions upon which a national banking association may retain or establish and operate a branch bank. Section 36(e) provides:

No branch of any national banking association shall be *established or moved* from one location to another without first obtaining the consent and approval of the Comptroller of the Currency. [emphasis provided]

In pertinent part § 36(c) addresses the establishment and operation of new branches:

A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: . . . (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.

The language of § 36(e) does give the Comptroller the authority to approve the relocation of branch banks. However, as the district court noted in its opinion and order, the Comptroller's authority to allow relocation "stems from § 36(c), since it is nowhere else affirmatively expressed, and § 36(c) specifically conditions the branching of national banks upon State law", citing *Bank of Dearborn v. Saxon*, 244 F.Supp. 394 (E.D.Mich.1965), aff'd, 377 F.2d 496 (6th Cir. 1967).

In the *Dearborn* case, a Michigan state bank brought an action challenging the validity of the Federal Comptroller's approval of a national bank's application for a branch. The trial court held that the Comptroller had abused his discretion in approving the national bank's scheme, which sought to evade applicable state law prohibiting the establishment of a branch in a city (inside branch) in which the bank was already in operation. The bank had closed an existing branch and relocated it a short distance across the city line. The bank then opened a branch in a new shopping center within the city limits which, the bank claimed, was only a move of the old branch to a new location. In holding that the

Comptroller did not have plenary power to authorize moves of national bank branches regardless of the state law, the district court discussed the history and the nature of the statutory grant of power to the Comptroller under the National Bank Act (12 U.S.C. § 21 *et seq.*).

Prior to 1927, national banks were forbidden to branch. *First National Bank in St. Louis v. State of Missouri*, 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486 (1924). However, with the enactment of the McFadden Act in 1927, Congress authorized "inside" branching (branching in the same city as the main office). Congress severely restricted this form of branching by providing that national banks could establish and operate inside branches if such branches were permitted to state banks by the law of the state in question. The court in *Dearborn, supra,* stated that:

Here we see for the first time the dependence upon state law, which is one of the primary issues in this case, and which dependence is denied by the Comptroller. It is of significance to our interpretation of the law that the precise issue here argued by the Comptroller (namely, his independence of state law) was also urged to Congress at this time and rejected. 76 Cong.Rec. 1998–2026 (1933). See, also, Chapman and Westerfield, Branch Banking, 102–108, 118–120 (1942).

*Bank of Dearborn v. Saxon, supra* at p. 400.

Also appearing in the 1927 McFadden Act was § 36(e). In the court's view, the enactment of § 36(e), together with the provision for inside branching, indicated that in 1927 Congress intended that national banks would establish and operate inside branches subject to the Comptroller's approval. However, the court stated:

. . . the authority to move branches (referred to in Sec. 36(e) above) was considered to be merely incidental to the establishment thereof. The "moving" authority is to be implied from Sec. 36(c), which section refers back to and is subject to state law.

*Id.* at p. 400

Congress amended § 36(c) in 1933 and by the language of the amendment it became

clear that the law of the state would be determinative in regard to the problem of branch banking. *Bank of Dearborn, supra.* The United States Supreme Court, after reviewing the history of the National Bank Legislation, noted the rationale for such an approach in *First National Bank of Logan v. Walker Bank & Trust Company,* 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966):

It appears clear from this résumé of the legislative history of § 36(c)(1) and (2) that Congress intended to place national and state banks on a basis of "competitive equality" insofar as branch banking was concerned.

*Id.* at p. 261, 87 S.Ct. at p. 497.

Thus the National Bank Act gave national banks the same opportunity for branching as state banks with the effect of perpetuating a dual bank system. Because of the doctrine of competitive equality, it seems clear that § 36(e), upon which the Comptroller relies here as the Comptroller did in *Dearborn,* "does not in truth grant him any plenary power to authorize moves of branches without regard to the provisions of the law of the state in question". *Bank of Dearborn, supra* at p. 401. Clearly the Comptroller has the authority to move branches under § 36(e). However, in *Dearborn* the court stated:

. . . such authority stems from section 36(c) by way of implication (since it is nowhere affirmatively expressed) and 36(c), as has been seen, specifically refers to it as being based upon state law.

*Ibid.* Any other reading of 12 U.S.C. § 36(e) would make that section inconsistent with the statutory scheme of the National Banking Act in its entirety and create the anomalous result of giving the Comptroller plenary power to authorize a national bank to "move" into an area in which under state law neither state banks nor national banks could have established and operated a new branch in the first place.

Appellants argue that *Dearborn* is distinguishable from the case here since the court

in *Dearborn* based its opinion upon the finding that the requested move was really the establishment of a new branch. Appellants point out that neither the Supervisor nor the district court suggested that the move to Basin City was anything other than a bona fide relocation. Accordingly, they contend that a relocation requires only the approval of the Comptroller pursuant to 12 U.S.C. § 36(e) without regard to the state statutory restrictions imposed on the establishment of new national branch banks through 12 U.S.C. § 36(c). *See Metropolitan National Bank of Farmington v. Camp,* 281 F.Supp. 238 (E.D.Mich.1968).

In view of the policies embodied in the National Banking Act and case law in the area, this position cannot be substantiated. In order to give effect to all parts of the National Banking Act and the policies embodied in that Act, § 36(c) must be read to limit the Comptroller's authority under § 36(e) to approve national bank branching, whether such branching involves the relocation of an existing branch or the establishment of a new branch.

The district court in its opinion and order noted that the rationale of 12 U.S.C. § 36 and the case law construing this section is the policy of competitive equality, which requires that neither state banks nor national banks secure an advantage over the other by means of unequal applicability of state law to their branching rights, citing *Independent Bankers of Oregon v. Camp,* 357 F.Supp. 1352 (D.C.Or.1973). The district court's approach is completely in accord with the United States Supreme Court's pronouncements in *First National Bank in Plant City, Florida v. Dickinson,* 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1968) and *First National Bank of Logan v. Walker Bank & Trust Company,* 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966).

In *Dickinson, supra,* the Court, relying on its decision in *Walker Bank,* stated:

The conditions under which national banks may establish branches are embodied in § 7 of the McFadden Act, 44 Stat. 1228, as amended, codified in 12 U.S.C. § 36. One such condition is that a "branch" may be established only when, where, and how state law would authorize a state bank to establish and operate such a branch, 12 U.S.C. § 36(c).

The Court also said:

At the outset we note that, while Congress has absolute authority over national banks, the federal statute has incorporated by reference the limitations which state law places on branch banking activities by state banks. Congress has deliberately settled upon a policy intended to foster "competitive equality".

*Id.,* 396 U.S. at pp. 130 and 131, 90 S.Ct. at pp. 341, 342.

In *Walker Bank, supra,* the Comptroller had argued that state law was not binding upon his decision to allow a branch. Recognizing the problems inherent in allowing the Comptroller to make a branching determination without regard to applicable state law, the Court stated:

. . . It is a strange argument that permits one to pick and choose what portion of the law binds him. Indeed, it would fly in the face of the legislative history not to hold that national branch banking is limited to those States the laws of which permit it, and even there "only to the extent that the State laws permit branch banking." . . .

*Id.,* 385 U.S. at p. 261, 87 S.Ct. at p. 497.

Based on the foregoing discussion, this court rejects appellants' argument. We hold that § 36(c) does apply to the relocation of a branch already in existence.

## II

▮ In pertinent part RCW 30.40.020 provides:

Branches authorized—Restrictions. A bank or trust company having a paid-in capital or not less than five hundred thousand dollars may, with the approval of the supervisor, establish and operate branches in any city or town within the state.

Because the meaning of the words "city or town" presented a question of state statutory construction, this court certified the

question to the Washington Supreme Court. In an en banc opinion, *Hart v. Peoples National Bank of Washington*, 91 Wash.2d 197, 588 P.2d 204 (1978), the Washington Supreme Court held:

> Since the language of the statute [RCW 30.40.020] is reasonably open to the interpretation under which the Supervisor has functioned for a period of more than 30 years, since that interpretation advances the statutory purpose, and since the legislature, having had many years in which to observe the administration of the law, has addressed its attention to the section in question and has not repudiated the Supervisor's interpretation, we conclude that it was the legislative intent that branching outside a bank's home county should be restricted to incorporated cities and towns.

*Id.*, 588 P.2d at p. 208.

The above holding is dispositive of appellants' second argument. The district court did not err in holding that RCW 30.40.020 only allows branching in incorporated areas.

### III

■ Appellants' final argument is that regardless of the district court's construction of RCW 30.40.020, the Bank could relocate in Basin City pursuant to RCW 32.04.-030. Appellants assert that since 12 U.S.C. § 36(c)(2) specifies that a national bank can operate "at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question . . ." and 12 U.S.C. § 36(h) defines "state bank", as it is used in § 36(c), to include "savings banks", and since under RCW 32.04.-030(3)(b) mutual savings bank branches can be established "in any county of the state", then national banks can branch in any county of the state without regard to the branching limitation contained in RCW 30.-40.020.

> The district court disagreed and stated: Since § 36(c) requires that branching will be permitted only if expressly authorized by State statute law, an applicant wish-

ing to branch under RCW 32.04.030 must satisfy all the provisions of that statute and show that it engages itself exclusively as a mutual savings bank. *State Chartered Banks v. Peoples National Bank*, [291 F.Supp. 180 (W.D.Wash.1966)]. Since Peoples National Bank, as a commercial bank, fails in certain particulars to satisfy all the requirements established in RCW 32.04.030 for the branching of a mutual savings bank, its application cannot be judged under that statute, but must, instead, be judged under RCW 30.-40.020.

We agree with the district court.

The Supervisor correctly contends that a mutual savings bank in Washington is not a "state bank" within the meaning of § 36(c)(2). RCW 32.04.030 provides no authority for Peoples Bank, or even a state commercial bank, to have a branch in an unincorporated area such as Basin City.

The Washington Supreme Court, in its opinion in *Hart v. Peoples National Bank, supra,* made it clear that RCW 30.40.020 controls the question of where state banks, i. e. any corporation organized under the laws of Washington engaged in the soliciting, receiving or accepting of money or its equivalent on deposit on a regular basis, *other than a trust company or a mutual savings bank,* may have a branch. Since RCW 30.40.020 dictates where a state commercial bank may branch, then it also determines where in the State of Washington national commercial banks may have a branch. The concept of competitive equality compels such a result. National commercial banks cannot have a branch in areas of a state where state commercial banks are precluded by statute from branching. Under appellants' approach, national banks could do exactly that, thereby giving them a rather significant competitive advantage. Such an approach would completely undermine the competitive equality concept embodied in the national banking legislation. This court therefore concludes, based upon the concept of competitive equality, that national banks may not have a branch in any part of a state where a state commer-

cial bank is prohibited from having a branch.

It certainly cannot be argued that the Peoples National Bank is a mutual savings bank, although it should be noted as the trial court did in *Washington Bankers Association v. Washington Mutual Savings Bank*, No. 853444 that:

> The increasing overlap in services offered by mutual savings banks and commercial banks is obliterating the traditional differences between savings banks and commercial banks. (King County Superior Court, Nov. 30, 1978), aff'd, 92 Wash.2d 453, 598 P.2d 719 (Wash.1979).

However, a mutual savings bank is a separate and distinct legislative creation from state commercial savings banks. *See* RCW Title 32. In our opinion, national banks cannot locate branches where under Washington law mutual savings banks may locate as it would thus destroy the concept of competitive equality embodied in the National Banking Act.

The judgment of the district court is AFFIRMED.