**MANAGEMENT RECRUITERS INTERNATIONAL, INC., et al., Petitioners–Appellees,**

v.

**James W. BLOOR, Christine E. Bloor, and Health Care International, Inc., Respondents–Appellants.**

No. 96–4198.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 18, 1997.

Decided Nov. 19, 1997.

---

· Michael K. Rode (briefed), Donald L. Goldman (argued & briefed), Management Recruiters, Intern., Inc., Cleveland, OH, for Petitioner–Appellee.

Howard E. Bundy (briefed), Howard R. Morrill (argued & briefed), Bundy & Morrill, Inc., Bellevue, WA, for Respondents–Appellants.

Before: NELSON, BOGGS and COLE, Circuit Judges. .

## OPINION

BOGGS, Circuit Judge.

James W. Bloor, along with his wife, Christine E. Bloor, and their company, Health Care International, Inc. (collectively, "Bloor"), appeals the decision of the district court granting the petition of Management Recruiters International, Inc. ("MRI"), to compel arbitration in Cleveland, Ohio. We agree with the district court that the franchise agreement between the parties, properly interpreted, reflects an agreement to arbitrate in Cleveland. We therefore affirm the decision of the district court.

### I

Bloor spent the summer of 1995 investigating various franchise business opportunities. In October 1995, Bloor decided to sign a franchise agreement ("Agreement") with MRI, a firm whose franchisees provide personnel placement services in cities throughout the United States. Bloor, a resident of

Washington State, intended to open an MRI franchise called Management Recruiters of Woodinville in Woodinville, Washington. MRI, which has its principal place of business in Cleveland, required Bloor or his designee to attend a 15–day franchise management training program in Cleveland. Based in part on MRI's alleged representations, Bloor believed at the time he entered into the Agreement that his franchise would achieve a positive cash flow by January 1996. As explained below, Bloor's franchise did not live up to expectations.

The Agreement contains two provisions relevant to Bloor's appeal. First, the Agreement requires that disputes relating to the Agreement be resolved through binding arbitration to be conducted in Cleveland:

> 16.1 ... [A]ll controversies, claims, disputes and matters in question arising out o[f], or relating to, this Agreement or the breach thereof, of [sic] the relations between the parties, shall be decided by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Either party may apply to the American Arbitration Association for a determination of the dispute as set forth in the notification thereof by the originating party. The parties agree that the arbitration shall take place in Cleveland, Ohio, and shall be governed by the law of the State of Ohio and the Federal Arbitration Act, and shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof, including a federal district court, pursuant to the Federal Arbitration Act....

Second, the Agreement contains a rider ("Rider"), included in the Agreement as originally signed, altering the above requirement to provide that arbitration will be conducted in Washington, but only to the extent that local arbitration is a valid requirement of the Washington Franchise Investment Protection Act, Wash. Rev.Code § 19.100 *et seq.* ("FIPA"), at the time of the arbitration:

> The following is added to Section 28 of the Franchise Agreement, in place of any conflicting provisions:

> 28.2. The state in which the territory is located has the following provisions which may be applicable: Washington Franchise Investment Protection Act, 1976 Revised Code of Washington, Title 19, Chapter 19.100. The following provisions shall govern the relationship between MANAGEMENT RECRUITERS and FRANCHISEE, *to the extent they are then valid requirements of the statute:*

> > 28.2.1. In any arbitration involving a franchise purchased in Washington, the arbitration site shall be either the state of Washington, or in a place mutually agreed upon at the time of the arbitration, or as determined by the arbitrator....

(Emphasis added.)

By the spring of 1996, Bloor realized that his MRI franchise was not going to be as lucrative as he had hoped. On May 31, 1996, he filed suit against MRI in the Superior Court of King County, Washington, alleging a variety of tort and statutory claims including fraudulent misrepresentation, violations of the Federal Trade Commission Franchise and Business Opportunity Rule, and violations of FIPA. MRI removed the case to the United States District Court for the Western District of Washington and, with the parties' agreement, that court stayed the action pending arbitration. On August 9, 1996, MRI filed a petition in the United States District Court for the Northern District of Ohio requesting an order directing Bloor to submit his claims to arbitration in Cleveland. On August 13, 1996, Bloor filed an arbitration demand with the American Arbitration Association in Seattle. Some time later, Bloor apparently also filed a petition to compel arbitration in the federal district court for the Western District of Washington.

## II

In the district court, Bloor advanced two arguments in opposition to MRI's petition to compel arbitration in Cleveland: first, that Bloor's filing with the American Arbitration Association in Seattle rendered the petition moot; and second, that the parties agreed to arbitrate in Washington and that the district

court in Ohio therefore was without jurisdiction to grant MRI's petition. The district court rejected these arguments. The court initially noted that the requirements for personal jurisdiction and for federal subject matter jurisdiction premised on diversity of citizenship were satisfied. The court then turned to the question of jurisdiction under the Federal Arbitration Act ("FAA"). Recognizing that, under Section 4 of the FAA, only a district court in the state where the parties agreed to arbitrate has jurisdiction to order arbitration, the district court noted that the effectiveness of the Washington forum-selection clause contained in the Rider depends upon whether FIPA contains a valid in-state arbitration requirement. The district court examined the provisions of FIPA, found "no statute requiring that the location of the arbitration be determined in the manner provided in the rider," and therefore concluded that it had jurisdiction to rule on MRI's petition. Because arbitration is mandatory under the Agreement, the district court then granted MRI's petition and ordered the parties to submit their dispute to arbitration in Cleveland. Bloor now appeals the district court's order.

### III

### A

■■■ The question presented by Bloor's appeal is whether the district court had jurisdiction to rule on MRI's petition to compel arbitration. To resolve this question, we must determine whether the parties agreed to arbitrate in Cleveland, as MRI contends, or whether the language of the Rider effectively changed the agreed arbitration forum from Cleveland to Washington State, as urged by Bloor. Section 4 of the FAA provides that:

[A] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration pro-

ceed in the manner provided for in such agreement.

9 U.S.C. § 4. Section 4 further requires that the arbitration proceedings themselves "shall be within the district in which the petition for an order directing such arbitration is filed." We agree with the majority of courts that have recognized that, where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir.1995); *Alpert v. Alphagraphics Franchising, Inc.*, 731 F.Supp. 685, 689 (D.N.J.1990); *Management Recruiters of Albany, Inc. v. Management Recruiters Int'l, Inc.*, 643 F.Supp. 750, 753 (N.D.N.Y.1986). "Otherwise, the clause of [Section] 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless." *Lauer*, 49 F.3d at 327.

Here, the Agreement contains two forum-selection provisions. The first provision, contained in Section 16.1 of the Agreement, requires the parties to submit their disputes to an arbitrator in Cleveland. The second provision, contained in the Rider, requires the parties to submit their disputes to arbitration in the state of Washington, but only if such "in-state" arbitration is a valid requirement of FIPA. Like the district court, we conclude, based on our examination of FIPA, that there is no express statutory provision in FIPA requiring out-of-state franchisors such as MRI to agree to arbitrate their disputes with Washington residents within Washington State. Indeed, FIPA contains a lengthy provision requiring franchisors to deal with franchisees "in good faith" and setting forth an extensive list of requirements governing franchise relationships, in which an in-state arbitration requirement is notable by its absence. *See* Wash. Rev.Code § 19.100.180.

### B

■■■ Bloor does not appear to disagree that the text of FIPA itself contains no provision requiring MRI to arbitrate its disputes with Bloor in Washington. Bloor argues, however, that an advisory opinion issued by a

Washington administrative official interpreting the "good faith" language of FIPA imports such a requirement into the statutory text. The advisory opinion, issued by the Washington State Securities Administrator, states:

[Wash. Rev.Code § ] 19.100.180(1) requires that the parties to a franchise agreement deal with each other in good faith. Additionally, [Wash. Rev.Code § ] 19.100.180(2)(h) renders it an unfair act or practice to impose on a franchisee by contract an unreasonable standard of conduct.

* * *

The Securities Administrator finds that it is not in good faith, reasonable or a fair act and practice for a franchisor to require an arbitration clause in a franchise agreement that unfairly and non-negotiably sets the site of arbitration in a state other than the state of Washington. Based on this finding, the Securities Administrator finds acceptable a franchise offering that includes an arbitration agreement that provides for the site of arbitration: (1) in the state of Washington, (2) as mutually agreed upon at the time of arbitration, or (3) as determined by the arbitrator at the time of arbitration.

Franchise Interpretive Statement 4, CCH Business Franchise Guide ¶ 5470.78 ("FIS–4").

We do not believe that FIS–4 satisfies the condition necessary to trigger the Washington forum-selection provision of the Rider (namely, the existence of a valid statutory requirement of in-state arbitration). For one thing, the Rider provision for a Washington forum is only triggered by a "valid requirement[ ] of the *statute* " (emphasis added). FIS–4, by contrast, is the advisory opinion of a state bureaucrat—a far cry from the kind of legislative act we traditionally associate with the word "statute." [1] If the parties had meant to arbitrate in Washington to the ex-

tent required by Washington *law* (as distinct from the Washington franchise investment *statute* ), we presume they would have said so. As written, however, the Rider is reminiscent of numerous instances in which an activity is permitted (or required) only if explicitly permitted (or required) by statute, and not merely by regulatory or judicial gloss. *Cf.* 12 U.S.C. § 36(c) (permitting national bank branching only to the extent "specifically authorized by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition"); Executive Order No. 10577, Rule 1.2 (Nov. 22, 1954) (only those legislative- and judicial-branch positions "specifically made subject to the civil-service laws by statute" are covered by civil service protections); 15 U.S.C. § 18a(b)(3) (exempting from antitrust laws "transactions specifically exempted from the antitrust laws by Federal statute"). Provisions (whether contractual or statutory) conditioning the permissibility of an activity on an express legislative enactment typically are designed to ensure a clear statement from a democratically accountable body. *See* William V. Luneburg, *Retroactivity and Administrative Rulemaking*, 1991 DUKE L.J. 106, 121 n. 9. As we discuss below, difficult Supremacy Clause issues likely would be implicated by a state-law requirement invalidating arbitration agreements that provide for arbitration outside Washington. We thus can easily understand why the parties would agree by means of the Rider to recognize an in-state arbitration requirement only if legislatively enacted by statute. As it is, the parties have used the word "statute" in the Rider, and we discern no requirement of in-state arbitration in the statute.

### C

Because the Rider uses the word "statute" rather than a less specific word such as "law," we reject Bloor's argument that we should defer to FIS–4 as the authori-

---

1. Black's Law Dictionary defines "statute" as "[a] formal written enactment of a legislative body, whether federal, state, city, or county. An act of the legislature declaring, commanding, or prohibiting something; a particular law enacted and established by the will of the legislative department of government; the written will of the legislature, solemnly expressed according to the forms necessary to constitute it the law of the state." BLACK'S LAW DICTIONARY 1410 (6th ed.1990).

tative interpretation of FIPA's meaning by the administrative agency charged with administering FIPA. Even if the Rider's effectiveness was not conditioned on an express statutory requirement of in-state arbitration, however, Bloor's deference argument is unpersuasive on its merits. Bloor is correct that Washington courts, like federal courts, defer to authoritative agency interpretations of ambiguous statutes if such interpretations are reasonable. *Compare Hart v. Peoples Nat'l Bank,* 91 Wash.2d 197, 588 P.2d 204, 207 (1978) (Washington state judicial deference to state agency interpretations), and *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (federal judicial deference to federal agency interpretation). But FIS–4 is not an authoritative agency interpretation; under the Washington Administrative Procedure Act, interpretive statements such as FIS–4 are "advisory only." *See* Wash. Rev.Code § 34.05.230. While the Washington courts appear not to have addressed the question, the majority view among federal courts is that statutory interpretations expressed in agency advisory opinions are not entitled to deference. *See, e.g., Crandon v. United States,* 494 U.S. 152, 177, 110 S.Ct. 997, 1011, 108 L.Ed.2d 132 (1990) (Scalia, J., concurring); *Southern Ute Indian Tribe v. Amoco Prod. Co.,* 119 F.3d 816, 832 (10th Cir.1997) (citing cases); *but see Elizabeth Blackwell Health Ctr. for Women v. Knoll,* 61 F.3d 170, 182 (3d Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 816, 133 L.Ed.2d 760 (1996). We are persuaded that where, as here, an agency is empowered both to promulgate binding rules, *see* Wash. Rev.Code. § 34.05.320, and to issue "advisory-only" interpretive statements, by negative implication the agency's choice to do the latter indicates that its interpretation is not entitled to *de facto* binding effect through judicial deference.

### D

We note in passing that, if Bloor were correct that FIPA (either in specific words or as interpreted by the Securities Administrator) imposed an absolute requirement of in-state arbitration notwithstanding the parties' agreement to arbitrate in Cleveland, its va-

lidity would be in serious doubt as a result of the preemptive effect of the FAA. Section 2 of the FAA provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held that, under Section 2, the forum expectations of parties to an arbitration agreement as reflected in a written agreement may not be upset by state law. *See Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 857, 79 L.Ed.2d 1 (1984). A state administrative rule along the lines of FIS–4, in which out-of-state forum-selection provisions are deemed inherently unconscionable, would be especially problematic in view of the Supreme Court's holding that a *court* "may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what ... the state legislature cannot." *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987).

As explained above, however, we are confident that the Agreement, properly interpreted, shows that the parties agreed to arbitrate in Cleveland. The Rider's requirement of arbitration in Washington was contingent on a condition precedent—the existence of a statutory requirement of in-state arbitration—that was never satisfied. Accordingly, we need not determine conclusively whether FIPA or FIS–4 is preempted by the FAA.

### IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.