418 F.2d 121
 MARION NATIONAL BANK OF MARION and First National Bank in Marion, Plaintiffs-Appellees,
v.
The VAN BUREN BANK and William B. Camp, Comptroller of the Currency of the United States, Defendants-Appellants.
 No. 17078.
 No. 17114.
 United States Court of Appeals Seventh Circuit.
 November 5, 1969.
 Rehearing Denied January 6, 1970.
 
 Morton Hollander, Chief, Appellate Section, Leonard Schaitman, Attorney, U. S. Department of Justice, Washington, D. C., J. A. Bruggeman, Fort Wayne, Ind., Wasson J. Wilson, Hammond, Ind., Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., Wilson, Benne, Feingold & Donnersberger, Hammond, Ind., Barrett, Barrett & McNagny, Fort Wayne, Ind., for Van Buren Bank.
 George P. Osborn, David L. Kiley, Kiley, Osborn, Kiley & Harker, Marion, Ind., for First Nat. Bank in Marion.
 William F. Welch, McHale, Cook & Welch, Indianapolis, Ind., for Marion Nat. Bank of Marion.
 Before HASTINGS, Senior Circuit Judge, and SWYGERT and FAIRCHILD, Circuit Judges.
 FAIRCHILD, Circuit Judge.
 
 
 1
 Action by two banks in Marion, Indiana to enjoin the Comptroller of the Currency of the United States from approving, and the Van Buren Bank from carrying out, a plan whereby the Van Buren Bank will open a banking facility in Marion as well as in Van Buren. The district court granted the injuction.[1]
 
 
 2
 Marion is a city of about 40,000, the county seat of Grant county. The town of Van Buren is in the same county, twelve miles from Marion. Van Buren has a population of about 1,000.
 
 
 3
 Van Buren Bank is a state bank and the only bank in Van Buren. It proposes to become a national bank, change its name, increase its capital, open a banking facility in Marion as its main office, and retain its facility in Van Buren as a branch.
 
 
 4
 On July 19, 1966, Van Buren Bank forwarded three applications to the comptroller and the appropriate regional administrator. They were accompanied and supplemented by a letter of transmittal.
 
 
 5
 One was an "Application to convert a state bank into a national banking association." It proposed a new name, an increased capital structure, and stated that the bank had no branches, but desired "to move its head office to Marion, Indiana, and retain present head office as branch."
 
 
 6
 The second was an "Application for a change in location of head office with the present head office to become a branch." It sought permission to change the location of the head office from an address in Van Buren to one in Marion.
 
 
 7
 The third was an "Application of converting bank for fiduciary powers." For the purpose of this case, this application may be disregarded.
 
 
 8
 Notice was given to plaintiffs, and objections made. Plaintiffs alleged that the procedure followed by the comptroller in considering the applications and objections denied them due process. This issue was not decided below, nor argued on appeal.
 
 
 9
 On October 11, 1966 the deputy comptroller informed the Van Buren Bank that, subject to fulfilment of certain conditions, preliminary approval had been given to convert to a national bank under the title "Citizens National Bank of Grant County", to relocate the main office at Marion with a branch office at the present address, and to increase the capital.
 
 
 10
 Plaintiffs brought this action. The Van Buren Bank stipulated to their standing. The comptroller did not, but has not seriously contested it on appeal.
 
 
 11
 Such aspects of the transaction as conversion to a national bank, change of name, and change of capital structure present no issue. We can consider the matter as if Van Buren Bank were a national bank with sufficient capital to meet the requirements of having its head office in one community and a branch in the other.
 
 
 12
 As we see it, the issue is whether Indiana law would affirmatively permit a state bank to branch in like manner under like circumstances.
 
 
 13
 Relocation of a national bank is permitted in certain circumstances, and with the approval of the comptroller, by 12 U. S.C. § 30. The propriety of the move is not made to depend on state law.
 
 
 14
 Creation of a branch of a national bank must also have approval of the comptroller, but in addition the statute law of the particular state must specifically and affirmatively grant such authority to state banks. 12 U.S.C. § 36(c) provides:
 
 
 15
 "A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: * * * (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to state banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on state banks. * * *"
 
 
 16
 The history of the provision is outlined in First Nat. Bank of Logan, Utah v. Walker Bank[2] where the Supreme Court of the United States described the intention of Congress as placing "national and state banks on a basis of `competitive equality' insofar as branch banking was concerned."[3] The Court was dealing with a portion of the section designated (1), and omitted above, governing branches within the same municipality as the main office. (1) Simply requires the branching to be "expressly authorized" by state law and does not contain the other emphatic language in (2), above quoted, yet the Court, without the aid of the latter language, rejected an argument that one need look only at the portion of the state statute which authorized branches, but not at the portion which imposed restrictions.
 
 
 17
 The portion of the pertinent Indiana statute, applicable in counties such as Grant, reads as follows:
 
 
 18
 "* * * any bank or trust company may open or establish a branch bank in any city or town within the limits of the county in which the principal office of such bank or trust company is located, if there is no bank or trust company located in such city or town. * * *."[4]
 
 
 19
 It is clear, of course, that even as a national bank and with the approval of the comptroller, the Van Buren Bank could not establish and operate a new branch in Marion. It would not be permitted to do so as a state bank because plaintiffs are already there.
 
 On the other hand, it is also clear that:
 
 20
 (1) The Van Buren Bank could, as a national bank and with the comptroller's approval, move its entire banking facility from Van Buren to Marion, notwithstanding plaintiffs' presence in Marion, and,
 
 
 21
 (2) Having done so, and assuming no other bank had been established in Van Buren in the interim, the Van Buren Bank could, with the comptroller's approval, establish and operate a new branch in Van Buren.
 
 
 22
 Defendants' case as we see it, is that since the single maneuver proposed will reach the same end results as (1) and (2) would probably reach, and since (1) and (2) could lawfully be executed as separate steps, the proposed maneuver is lawful.
 
 
 23
 The difficulty is, however, that the proposed maneuver is a single indissoluble process. An integral part of it is that an existing unit bank will branch. The facility which will be subordinate and, in banking parlance, the "branch", will not be new. The facility which will be new will, by a quick twist, not be a "branch", but the head office. It will be located in territory which a state bank could not lawfully enter via the establishment of a branch.
 
 
 24
 The policy which seems to underlie the Indiana statute is that creation of a branch bank is desirable or justifiable as a means of establishing a new local banking facility in a municipality not already so served, but not desirable or justifiable as a means of promoting competition in a municipality where one or more banks are already located. In the light of this policy, it seems a reasonable implication that the Indiana statute does not authorize a state bank to create a branch by moving its head office into a city where banks are already present and continuing its existing facility as a branch.[5]
 
 
 25
 Moreover, even beyond our interpretation of the Indiana statute as excluding authority for a state bank to branch in the manner proposed, the controlling federal statute, 12 U.S.C. § 36(c) authorizes creation of a branch only if the state statute grant "such authority affirmatively and not merely by implication or recognition * * *." Of course Congress did not insist upon express treatment of every minor variant circumstance, but we consider the present proposal to be sufficiently distinct from the ordinary pattern of establishing branches so that the federal statute creates a presumption that general language does not authorize it.
 
 
 26
 Defendants rely on Traverse City State Bank v. Empire National Bank.[6] The facts are similar and the district court there reached the opposite result. A state bank in the village of Empire, Michigan, applied to the comptroller for conversion to a national bank, a change of name, a change of location from the village of Empire to the City of Traverse City, Michigan, and authority to operate its office in Empire as a branch. The comptroller approved and banks in Traverse City sought an injunction. Plaintiffs apparently argued that there must be a finding of necessity before a change of location of a national bank can be approved under 12 U.S.C. § 30, particularly when state law seems to require it for a move of a state bank. The district court decided otherwise and denied the injunction.
 
 
 27
 The Michigan statute with respect to creation of branches appears similar in material respects to the Indiana statute. We are told that the parties in Traverse City argued the question whether the branching aspect of the maneuver was lawful, but the opinion does not deal directly with that point. The decision supports the position of defendants here by the conclusion that the case was controlled by 12 U.S.C. § 30 and resulting implication that the case raised no question under 12 U.S.C. § 36. Traverse City was decided without the benefit of the Supreme Court's decision in Walker Bank. With all respect, we are not persuaded by Traverse City that the aspect of change of location can be considered separately from the aspect of branching.
 
 
 28
 The judgment appealed from enjoined the comptroller from giving final approval to what was referred to as "the three-part application" (conversion, relocation of main office to Marion, and retention of Van Buren office as a branch) and required him to rescind preliminary approval. It enjoined the Van Buren Bank and others from taking further action pursuant to that application.
 
 
 29
 The Van Buren Bank applied for a modification of the decree so as to permit the bank to withdraw its application for authority to maintain a branch in Van Buren and to permit the comptroller to give final approval to the other portions of the application. The comptroller informed the court he had no objection and if permitted to do so would consider and approve or disapprove the application as amended.
 
 
 30
 The district court denied modification.
 
 
 31
 We affirm the judgment solely upon the basis that the maneuver proposed involves creation of a branch which would not be authorized to state banks by the statute law of Indiana and is therefore not authorized for national banks by 12 U.S.C. § 36(c). If creation, or retention, of a branch were substracted from the proposal, this reason for deeming it unlawful would fail. We are not in a position, on this record, to say that the withdrawal of that part of the proposal and approval of the balance, if granted, would or would not be unlawful for any other reason.
 
 
 32
 The judgment appealed from is to be modified by adding:
 
 
 33
 Defendant Van Buren Bank is not enjoined by this decree from modifying its application so that it will not involve the creation or retention of a branch and the comptroller is not enjoined from considering and approving or disapproving the application as so modified. This decree neither expresses nor implies that any particular procedure is required in order to protect whatever rights plaintiffs may have with respect to the consideration of the modified application nor that approval or disapproval thereof would or would not be unlawful.
 
 
 34
 As so modified, the judgment is affirmed. Appellees are allowed costs on appeal.
 
 
 
 Notes:
 
 
 [1]
 The final opinion is unreported. The opinion which accompanied a preliminary injunction is reported as Marion National Bank of Marion v. Saxon (N.D.Ind., 1966), 261 F.Supp. 373
 
 
 [2]
 (1966), 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343
 
 
 [3]
 Id., at 261, 87 S.Ct. at 497.
 
 
 [4]
 § 18-1707, Burns Indiana Statutes
 
 
 [5]
 The parties have called to our attention an opinion of the Attorney General of Indiana, Opinion 47, December 7, 1960, which reaches a similar result
 
 
 [6]
 (W.D.Mich., 1964), 228 F.Supp. 984