**STATE OF UTAH ex rel., DEPARTMENT OF FINANCIAL INSTITUTIONS and W. S. Brimhall, Commissioner of Financial Institutions, Plaintiffs-Appellees,**

v.

**ZIONS FIRST NATIONAL BANK OF OGDEN, UTAH, Defendant-Appellant.**

No. 78–1733.

United States Court of Appeals, Tenth Circuit.

Argued Oct. 15, 1979.

Decided Feb. 13, 1980.

Joseph P. McCarthy, Asst. Atty. Gen., Salt Lake City, Utah (Robert B. Hansen, Atty. Gen., and H. Wright Volker, Asst. Atty. Gen., Salt Lake City, Utah, with him on the brief), for plaintiffs-appellees.

H. Russell Hettinger of Callister, Greene & Nebeker, Salt Lake City, Utah (J. Thomas Greene and Gary L. Schwendiman of Callister, Greene & Nebeker, Salt Lake City, Utah, with him on the brief), for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

The State of Utah, upon information of its Department of Financial Institutions and one W. S. Brimhall, Commissioner of Financial Institutions, brought the present action against Zions First National Bank of Ogden, Utah, seeking declaratory judgment and injunctive relief. It was alleged in the complaint that Zions, a national bank, maintained its place of business at 2350 Washington Boulevard in Ogden, Utah, and that it was also maintaining a branch bank, i. e., a drive-in facility, at 2302 Washington Boulevard in Ogden, Utah, in violation of both federal and state law. 12 U.S.C. § 36(f) and (c) and Utah Code Ann. § 7–3–6 (1953). By answer Zions denied that its drive-in facility at 2302 Washington Boulevard was a "branch bank" within the meaning of 12 U.S.C. § 36(f). The case was tried to the court on facts which were, in the main, stipulated to by opposing counsel.

The trial court concluded that Zions' drive-in facility was a branch bank within the meaning of 12 U.S.C. § 36(f) and that since a state bank under local Utah law could not maintain a drive-in facility of the type here maintained by Zions, under the provisions of 12 U.S.C. § 36(c), Zions was precluded from further maintaining the drive-in facility. Accordingly, Zions was ordered to stop, cease and desist its drive-in facility, and it is from that judgment and order that Zions now appeals.

As indicated, there is no real dispute as to the facts. In 1973, Zions, a national bank, established its present premises at 2350 Washington Boulevard in Ogden. Those premises front on Washington Boulevard mid-way between 23rd Street and 24th Street. Zions desired to have a drive-in facility, but was unable to do so on its own property, nor was it apparently successful in purchasing any contiguous property upon which a drive-in facility could be built. However, at about the same time Zions opened for business at 2350 Washington Boulevard, it acquired the corner property at 23rd Street and Washington Boulevard with the thought that some time in the future it might construct a drive-in facility on the corner property.

In 1975 Zions sought a ruling from the Comptroller of Currency as to whether it could maintain a drive-in facility on the corner property at the intersection of 23rd Street and Washington Boulevard. The Comptroller ruled that the proposed drive-in facility would constitute a "contiguous unit operation" with the existing main office and that there was "no legal objection" to the establishment of such facility.

On the strength of the Comptroller's ruling, Zions constructed a drive-in facility on the corner property at 23rd Street and Washington Boulevard which was opened for business on or about July 1, 1976.

Zions' drive-in facility has a safe and a teller's cannister. The drive-in has different hours than the main bank, as it opens earlier and stays open later. The drive-in facility does not offer full banking services, but does accept deposits and loan payments, and also cashes checks.

As indicated, Zions' drive-in facility is not contiguous to the bank's premises. There are six separate tracts of land between the two, upon which are located nine different businesses. Along Washington Boulevard, the two properties are some 271 feet apart. The distance between the two properties at the rear property line is some 249 feet. There is no "physical connection" between the drive-in facility and the bank proper, except for telephone connections.

With possible exceptions not here pertinent, Utah statutory law prohibits branch banks in all cities of second class, which it is agreed Ogden is. Utah Code Ann. § 7-3-6 (1953). The Commissioner of Financial Institutions for the State of Utah has adopted the position that any separate facility which accepts deposits and cashes checks is a branch unless it is located either on the premises of the main banking house itself, or on property *immediately* contiguous thereto. The only exception to this rule is that the Commissioner has allowed a main banking house to be separated from, and non-contiguous to, its drive-in facility

where the area of separation is occupied by a public thoroughfare, not by other business structures, *and* the drive-in and the main banking house are connected by a pneumatic tube or other like means of transmission.

Upon complaint, the Commissioner of Financial Institutions personally inspected the drive-in facility maintained by Zions, and concluded that it was a branch bank. When Zions declined to cease its drive-in operation, the Commissioner instituted the present proceeding.

█ It is agreed by all that whether Zions' drive-in facility is a branch bank is to be determined by reference to federal law, and not the state law of Utah. *First National Bank v. Dickinson*, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969). 12 U.S.C. § 36(f) defines the term "branch" as follows: *

> (f) The term "branch" as used in this section shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business located in any State or Territory of the United States or in the District of Columbia at which deposits are received, or checks paid, or money lent.

In *First National Bank v. Dickinson*, 396 U.S. 122, 135, 90 S.Ct. 337, 344, 24 L.Ed.2d 312 (1969), the Supreme Court declared that the term "branch bank," under the definition set forth in 12 U.S.C. § 36(f), includes, at the very least, "*any* place for receiving deposits or paying checks or lending money apart from the chartered premises . . ." (Emphasis in the opinion). The off-premises operations in *Dickinson* were two: (1) an armored car, described as a "mobile drive-in," which delivered cash in exchange for checks and received cash and checks at its depositor's premises; and (2) a secured receptacle for receipt of monies intended as deposits located in a shopping center about one mile from the bank proper. In *Dickinson* both of these off-premise banking operations were held to be branch banks under

---

* Utah Code Ann. § 7-3-6 (1953) defines a branch bank in language identical to that used in 12 U.S.C. § 36(f).

12 U.S.C. § 36(f). Application of the *Dickinson* rule to the instant case leads us to conclude, as did the trial court, that, under the provisions of 12 U.S.C. § 36(f), Zions' drive-in facility is a branch bank.

We recognize that there is authority to the effect that the rule of *Dickinson* should not be rigidly and mechanically applied and that other factors, such as the distance separating the main bank from the added facility, the presence or absence of intervening structures, the physical connection, if any, between the main bank and the added facility, and the availability of other locations for attached expansion, may be considered. See *Nebraskans for Independent Banking, Inc. v. Omaha National Bank,* 530 F.2d 755, 761 (8th Cir. 1976), *vacated and remanded* in light of new state legislation, 426 U.S. 310, 96 S.Ct. 2616, 48 L.Ed.2d 658 (1976), for a general discussion of this particular matter. However, like the Eighth Circuit, we agree that any consideration of such "other factors" cannot "overshadow [the] application of the statutory definition of 'branch,' " as interpreted in *Dickinson.* 530 F.2d at 761. Be all this as it may, the "other factors" present in the instant case, in the main, reinforce the conclusion of the trial court that Zions' drive-in facility is a branch bank under 12 U.S.C. § 36(f).

We believe our holding that Zions' drive-in facility is under federal law a branch bank is in general accord with *State of Colorado, ex rel. v. First National Bank of Fort Collins,* 540 F.2d 497 (10th Cir. 1976). In that case we held that an electronic banking facility located in a shopping center two miles away from the main bank building was violative of 12 U.S.C. § 36(f) in the sense that the electronic banking facility, under the statutory definition of the term, was a branch bank.

We do not regard our disposition of the present controversy to be really at odds with *North Davis Bank v. First National Bank of Layton,* 457 F.2d 820 (10th Cir. 1972). In that case we held that a drive-in banking facility, located about 100 feet away from the bank's offices and across a street 66 feet wide, connected with the bank by pneumatic tubes, and with no intervening structures, was not a branch bank under 12 U.S.C. § 36(f). Certainly that case is distinguishable from the instant one. In that case we pointedly noted that the national bank there involved was afforded no competitive advantage in maintaining its drive-in facility across the street from its main office, since state banks under local Utah law were allowed to do the same thing.

■ Although federal law determines whether a particular off-premise banking operation is a branch, the McFadden Act does not itself bar national banks from branching. On the contrary, under 12 U.S.C. § 36(c) national banks may branch "if and only if the host State [would] permit one of its own [state] banks to branch." *First National Bank v. Dickinson,* 396 U.S. 122, 130, 90 S.Ct. 337, 342, 24 L.Ed.2d 312 (1969) and *First National Bank of Logan v. Walker Bank & Trust Co.,* 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966). In other words, federal law determines what constitutes a branch bank, but under 12 U.S.C. § 36(c) state law will determine "when, where and how" a national bank may branch, if indeed it may branch at all.

■ Utah statutory law prohibits branch banks in cities of the second class, which Ogden is, unless the bank seeking to branch is taking over an existing bank. Utah Code Ann. § 7–3–6 (1953). *Walker Bank & Trust Company v. Taylor,* 15 Utah 2d 234, 390 P.2d 592 (1964). See also *Continental Bank & Trust Company v. Taylor,* 14 Utah 2d 370, 384 P.2d 796 (1963). Zions of course is not seeking to branch by taking over an existing bank. Under the applicable Utah statutes, then, a state bank could not do what Zions is doing in the maintenance of its off-premise drive-in facility. And under 12 U.S.C. § 36(c), Zions is not to be permitted to do so either.

The fact that the Commissioner of Financial Institutions for Utah has determined that under Utah law it is permissible for a state bank to build a drive-in facility on land contiguous to the premises of the bank proper, or on land directly across the street from the bank, is of no particular aid to Zions. That is not what Zions is doing.

From the record before us it is clear that a state bank of Utah, under Utah law, could *not* do that which Zions is now doing. Our disposition of this matter maintains "competitive equality," which is the intent of the McFadden Act. *First National Bank of Logan v. Walker Bank & Trust*, 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966).

The suggestion that the Utah statutes somehow except national banks from the provisions of Utah's banking statutes is not persuasive. It is correct that Utah Code Ann. § 7–3–1 (1953) states that "the provisions of this chapter apply to all banks organized under the laws of this state, to all banks doing business in this state, except banks organized under the laws of the United States . . ." That statute, however, has no present pertinency. This is not an instance where the State of Utah is attempting to impose its banking laws on a national bank. On the contrary, the United States by Congressional action has itself declared that national banks shall be permitted to branch in a given state to the extent, if any, that a state bank in the host state is permitted to branch. The argument that the exception contained in Utah Code Ann. § 7–3–1 (1953) is itself dispositive of the entire controversy is without merit.

Judgment affirmed.

