**STATE of Washington ex rel. Michael D. EDWARDS, State Supervisor of Banking et al., Plaintiffs–Appellants,**

v.

**John HEIMANN, Comptroller of the Currency et al., Defendants–Appellees.**

No. 79–3449.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 1980.

Decided Dec. 8, 1980.

---

Before SKOPIL and ALARCON, Circuit Judges, and BURKE,* District Judge.

SKOPIL, Circuit Judge.

## INTRODUCTION

Certain national chartered banks in Washington sought and obtained approval from the United States Comptroller of the Currency to exchange various branch banks. The Washington state Supervisor of Banking and an association representing state chartered banks brought suit on several theories to set aside the Comptroller's approval. Summary judgment was granted in favor of the national banks. The only issue on this appeal is whether the Comptroller had the statutory authority to approve the exchanges. We find that the relevant statutes are unambiguous and allow the result reached by the Comptroller.

We affirm.

## FACTS

The facts are not disputed. Certain national chartered banks (national banks) in Washington filed purchase and assumptions applications with the United States Comptroller of the Currency (Comptroller). The national banks sought approval to make various branch bank exchanges. Public hearings were held and notice of the proposed transactions was given to various federal and state agencies. After receiving comments from other agencies, the Comptroller determined that the proposed exchanges served the convenience and need of the affected communities, were pro–competitive and in the public interest. The Comptroller also determined that he had the requisite statutory authority to approve the transactions.

A trade association of state chartered banks (Community banks) and the State Supervisor of Banking (Supervisor) filed suits to overturn the Comptroller's decision.

William L. Williams, Asst. Atty. Gen., Olympia, Wash., for plaintiffs–appellants.

Charles S. Mullen, Graham & Dunn, Seattle, Wash., argued, for defendants–appellees; Charles Pinnell, Asst. U. S. Atty., Seattle, Wash., on brief.

---

* The Honorable Lloyd Hudson Burke, United States District Judge for the Northern District of California, sitting by designation.

The actions were consolidated. A request for an injunction was denied. A motion to certify a question of state statutory interpretation to the Washington Supreme Court was denied.

Through a series of pretrial proceedings, the issues were reduced to the single question of the authority of the Comptroller to approve the exchanges. Community banks and the Supervisor argued that the proposed branch exchanges were not authorized by 12 U.S.C. § 36(c) since the federal statute pertains only to "new" branches and not to the exchange of existing branches. Even assuming that the federal statute does permit the exchanges, Community banks and the Supervisor argued that the state statute cannot be interpreted to allow acquisition of a single branch. They claimed that the state statute does not contain the type of specific affirmative language required by the federal statute to authorize such a transaction.

National banks and the Comptroller interpreted the federal statute to encompass not only new branches but also any existing branch that might be acquired. National banks argued that the only reasonable interpretation of the word "new" in section 36(c) is "new to the acquiring bank" and not just *de novo*. They pointed to the clear, unambiguous language of the statute to counter Community banks suggested interpretation of the state statute.

Both sides moved for summary judgment. The district court granted the Comptroller's and national bank's motions for summary judgment and denied those of Community banks and the Supervisor. The district court found that the Comptroller exercised authority provided by the McFadden Act, 12 U.S.C. § 36(c), to approve the transactions and that he complied with the requirements of relevant state law as incorporated by section 36(c). Community banks and the Supervisor appealed.

## ISSUE

The issue presented on appeal is whether the Comptroller had the authority to approve the exchanges. The analysis is two–fold:

1) Whether 12 U.S.C. § 36(c) allows a national bank to establish a branch by purchasing an existing branch of another bank?; and

2) Whether under the relevant state law, R.C.W. 30.40.020, a state–chartered bank is affirmatively authorized to establish a branch by acquiring a single branch of another bank without acquiring the entire bank?

## STANDARD OF REVIEW

■ Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is clearly entitled to prevail as a matter of law. *Real v. Driscoll Strawberry Associates*, 603 F.2d 748, 753 (9th Cir. 1979). A legal question is presented when the issue is whether the Comptroller acted within the limitations created by federal and state law.[1] *Seattle Trust & Savings Bank v. Bank of California*, 492 F.2d 48, 50 (9th Cir.) *cert. denied*, 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974); *Springfield State Bank v. National*

---

1. The district court's review of the Comptroller's decision is a *de novo* determination of the legal issues involved. *Seattle Trust & Savings Bank v. Bank of California*, 492 F.2d 48, 50 (9th Cir.), *cert. denied*, 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974). On motions for summary judgment, our review is identical to that of the trial court. *E. g., Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 759 (9th Cir. 1980). We note, however, that in diversity cases, we are limited in our review of the district court's interpretation of state law. *E. g., Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980). We may not overrule a district judge on a question of state law unless the judge's findings are

"clearly wrong". *Id.* Our jurisdiction in this case is not predicated on diversity of the parties. Nevertheless, deference should be given to the district court's interpretation of state law. *E. g., Dakota National Bank & Trust Co. v. First National Bank*, 554 F.2d 345, 354 (8th Cir.) *cert. denied*, 434 U.S. 877, 98 S.Ct. 229, 54 L.Ed.2d 157 (1977). We decline, however, to hold that the more limited review applicable to diversity cases applies in this case to the district court's interpretation of Washington law. We find it unnecessary to do so since we are able to affirm the district court's decision under the stricter *de novo* standard.

*State Bank of Elizabeth*, 459 F.2d 712, 714 (3d Cir. 1972). We reject the use of an arbitrary and capricious standard when the question presented on appeal is a purely legal one. *Seattle Trust, supra* at 50.

## DISCUSSION

■■■ Congress has provided that national banks may establish and operate branch offices only when such branches are permitted to state banks by the law of the state in question. 12 U.S.C. § 36(c); *See First National Bank of Logan, Utah v. Walker Bank & Trust Co.,* 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966). Federal law determines what constitutes a branch bank, but state law determines when, where, and how a national bank may branch, if indeed, it may branch at all. *E. g., State of Utah v. Zions First National Bank of Ogden, Utah,* 615 F.2d 903, 906 (10th Cir. 1980); *Mutschler v. Peoples National Bank of Washington,* 607 F.2d 274, 278 (9th Cir. 1979). This scheme places national and state banks in competitive equality insofar as branch banking. *Walker Bank, supra,* 385 U.S. at 261, 87 S.Ct. at 497; *Hempstead Bank v. Smith,* 540 F.2d 57, 59 (2d Cir. 1976). Under this congressional policy of competitive equality, neither the federal or state banking administrator is empowered to veto branch authorizations of the other. A state supervisor applies state statutes in evaluating state bank branch applications. The federal administrator applies federal and state statutes in evaluating federal bank branch applications but does so independently of the state supervisor. *First National Bank of Fairbanks v. Camp,* 465 F.2d 586, 594 (D.C. Cir.1972) *cert. denied,* 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 255 (1973).

The relevant federal statute that empowers national banks to branch is 12 U.S.C. § 36(c). It reads in pertinent part:

A national banking association may, with the approval of the Comptroller of the Currency, establish and operate *new* branches: ... (2) at any point within the State in which said association is situated, if such establishment and operation are at the same time *authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition,* and subject to the restrictions as to location imposed by the law of the State on State banks. (emphasis added)

The state banking statute relevant to this case is R.C.W. 30.40.020 which reads in pertinent part:

A bank or trust company having a paid–in capital of not less than five hundred thousand dollars may, with the approval of the supervisor, establish and operate branches. . . .

. . . . .

No bank or trust company shall establish or operate any branch in any city or town in which its principal place of business is located in which any bank, trust company or national banking association regularly transacts a banking or trust business, *except by taking over or acquiring an existing bank, trust company or national banking association or the branch of any bank, trust company or national banking association operating in such city or town.* (emphasis added)

Resolution of the controversy in this case turns on the interpretation of the above statutes.

## I. Federal Statute

The trial court found that section 36(c) applies both to a "new" branch and to an "already–existing branch that might be acquired". The question of whether a proposed operation is a "branch" for purposes of applying section 36(c) is a question of federal law. *E. g., State Bank of Fargo v. Merchants National Bank & Trust,* 593 F.2d 341, 344 (8th Cir. 1979); *State of Utah v. Zions First National Bank of Ogden, Utah,* 615 F.2d 903, 906 (10th Cir. 1980). We have interpreted section 36(c) to apply to the proposed relocation of an old branch of a national bank. *Mutschler v. Peoples National Bank of Washington,* 607 F.2d 274 (9th Cir. 1979). Similarly, other courts have

determined that section 36(c) applied when a national bank proposed to move its main bank location and treat the old main bank as a new branch. *E. g., Marion National Bank of Marion v. Van Buren Bank,* 418 F.2d 121 (7th Cir. 1969). *See also First National Bank of Southaven v. Camp,* 333 F.Supp. 682 (N.D.Miss.1971), *aff'd. without op.* 467 F.2d 944 (5th Cir. 1972). *Cf. Ramapo Bank v. Camp,* 425 F.2d 333 (3d Cir.), *cert. denied,* 400 U.S. 828, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970) (bank's proposal to relocate its main office and maintain its old location as a branch is controlled by 12 U.S.C. § 30 and not by section 36(c)). These cases are not conclusive on the meaning of the word "new" in section 36(c), but do support the district court's conclusion.

■ We find that the strongest argument for interpreting the statute to include acquisition of another bank's branches is to implement the congressional intent to foster competitive equality between national and state banks. *Dakota National Bank & Trust v. First National Bank,* 554 F.2d 345, 355 (8th Cir.), *cert. denied,* 434 U.S. 877, 98 S.Ct. 229, 54 L.Ed.2d 157 (1977); *Seattle Trust & Savings Bank v. Bank of California,* 492 F.2d 48, 52 (9th Cir.) *cert. denied,* 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974). If state banks are able to exchange branches under state banking law, federal banks should not be prevented from exchanging branches. We find therefore that the district court correctly determined that section 36(c) applies to the proposed bank exchanges.[2]

## II. State Law

■ In determining whether to approve national bank branch applications, the Comptroller must consider all relevant state laws and comply with any requirements established by state statutes. *E. g., First Bank & Trust Co. v. Smith,* 545 F.2d 752, 752–53 (1st Cir. 1976) *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977);

*Hempstead Bank v. Smith,* 540 F.2d 57, 59–60 (2d Cir. 1976). The Comptroller makes an independent interpretation of the state law. *E. g., First National Bank of Fairbanks v. Camp,* 465 F.2d 586 (D.C.Cir. 1972) *cert. denied,* 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 255 (1973). The Comptroller is not bound by a state agency's interpretation of the state law, nor by the opinion of the state banking supervisor that no state bank could establish a branch under the same circumstances. *E. g., First National Bank of Fairbanks, supra* at 593–596. If the interpretation by the Comptroller is consistent with federal and state statutory restrictions, the contrary opinion of the state Supervisor is not a bar to the Comptroller's approval of the national banks' applications. *Id. Cf. Independent Bankers of Oregon v. Camp,* 357 F.Supp. 1352 (D.Or. 1973) (state supervisor's interpretation of state law regarding branch banking is at least entitled to respect and consideration in determining whether national banks may open branch in state).

In *Hart v. Peoples National Bank of Washington,* 91 Wash.2d 197, 588 P.2d 204 (1978), the Washington Supreme Court noted that R.C.W. 30.40.020 creates various restrictions on branch banking and under some circumstances permits branch banking only "by the acquisition of an existing bank *or branch* if there is a bank already serving the city or town." 588 P.2d at 206 (emphasis added). Similarly, in *State Chartered Banks in Washington v. Peoples National Bank of Washington,* 291 F.Supp. 180 (W.D. Wash.1966), R.C.W. 30.40.020 was interpreted as placing "a restriction on branches by forbidding the establishment of branches *except by taking over an existing branch.*" 291 F.Supp. at 196 (emphasis added).

■ We find the Washington statute, R.C.W. 30.40.020, to be unambiguous and to allow the result reached by the Comptroller. The statute expressly states that a state

---

**2.** National banks and the Comptroller also argue that the transactions are authorized by other federal statutes including 12 U.S.C. § 1828(c)(2); 12 U.S.C. § 24; and 12 U.S.C. § 29. Our finding that the Comptroller has

authority under section 36(c) to approve the exchanges makes it unnecessary to analyze the Comptroller's powers under these alternative statutes.

bank may branch by taking over or acquiring the branch of another bank, subject to other limitations not pertinent to this case. Nevertheless, Community banks and the Supervisor urge a different interpretation. They read the statute to mean that the acquiring bank must purchase not a single branch but the entire bank. In support of that interpretation, they rely on the historical context of the state statute.

 Under Washington law, words in common usage are to be given their plain and ordinary meaning. If the language used in a statute is unambiguous, a departure from its plain meaning is not justified by policy considerations. *State Chartered Banks of Washington v. Peoples National Bank of Washington*, 291 F.Supp. 180, 197 (W.D.Wash.1966). Thus, while the wisdom of placing restraints on internal expansion by forcing banks to resort to mergers and acquisitions may be questioned, the question is not for courts to resolve. *United States v. Marine Bancorporation*, 418 U.S. 602, 612 n.8, 94 S.Ct. 2856, 2865 n.8, 41 L.Ed.2d 978 (1974). We agree with the district court that the Comptroller complied with the requirements of the relevant state law.

### CONCLUSION

Congress has provided that state law determines how, when, and where a national bank may establish and operate branch offices. The Comptroller of the Currency is charged with the responsibility of interpreting state law and is not bound by a state agency's interpretation.

The state banks and the Supervisor argued that the federal and state statutes do not provide authority to the Comptroller to approve the exchange of national branches. The clear and unambiguous language of the statutes support the Comptroller's decision that he had the authority to approve the exchanges.

WE AFFIRM.