**Catherine A. GHIGLIERI, Texas Banking Commissioner, Plaintiff,**

v.

**SUN WORLD, NATIONAL ASSOCIATION and Eugene A. Ludwig, Comptroller of the Currency for the United States, Defendants.**

No. EP–96–CA–324–DB.

United States District Court, W.D. Texas, El Paso Division.

Oct. 29, 1996.

---

**3.** Pound, Roscoe, *The Causes of Popular Dissatisfaction with the Administration of Justice,* 29 ABA Ann.Rep. 395 (1906).

Dorothy Ann Johnson, Texas Department of Banking, Austin, TX, David Mattax, Assistant Attorney General for the State of Texas, Finance Division, Austin, TX, for Plaintiff Catherine A. Ghiglieri.

E. Edward Bruce, Covington & Burling, Washington, DC, Jeffrey S. Alley, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, TX, for Defendant Sun World National Association.

Larry J. Stein, Sr. Trial Attorney, Angela Ting, Trial Attorney, Office of the Comptroller of the Currency, Washington, DC, for Defendant Eugene A. Ludwig.

Karen M. Neeley, General Counsel, Independent Bankers Assoc. Of Texas, Austin, TX, for Amicus Curiae Independent Bankers Association of Texas.

Elizabeth A. Glenn, Assistant Attorney General for the State of New Mexico, Santa Fe, NM, for Amicus Curiae Financial Institutions Division of the New Mexico Regulation and Licensing Department & State Banking Commissioners for Arkansas, West Virginia and New Hampshire.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered the various Motions and Cross–Motions for Summary Judgment filed by each of the parties to the above-captioned cause. All Motions and Cross–Motions were timely filed. On Thursday, September 5, 1996, the Court heard the arguments of the parties. After due consideration, the Court is of the opinion that this action should be resolved as set forth below.

## FACTS

Sun World, National Association ("Sun World") is a national bank chartered by the Office of the Comptroller of the Currency of the United States ("OCC") under the National Bank Act. 12 U.S.C. § 21 *et seq.* Until August 2, 1996, Sun World operated its main office and two branches in El Paso, Texas. On that date, the OCC authorized Sun World to: (1) relocate its main office from El Paso, Texas, to Santa Teresa, New Mexico; (2) establish and operate a new branch at its former main office site in El Paso, Texas; and, (3) retain its two existing branches in El Paso, Texas.

## STANDARD OF REVIEW

"The Comptroller has wide discretion in the field of national banking and the exercise of his discretion will not be disturbed except when the exercise is arbitrary, capricious, or contrary to law." *First Nat'l Bank of Lamarque v. Smith,* 610 F.2d 1258, 1264 (5th Cir.1980) (citing *Ramapo Bank v. Camp,* 425 F.2d 333, 341 (3rd Cir.), *cert. denied,* 400 U.S. 828, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970); *First Nat'l Bank of Bellaire v. Comptroller of the Currency,* 697 F.2d 674, 680 (5th Cir.1983); 5 U.S.C. § 706(2)(A). The Comptroller's determination must be upheld if it is a "permissible construction" of the National Bank Act. *Department of Banking & Consumer Finance v. Clarke,* 809 F.2d 266, 269 (5th Cir.), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987) (citing *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778,

81 L.Ed.2d 694 (1984))); *Texas v. U.S.*, 756 F.2d 419 (5th Cir.), *cert. denied*, 474 U.S. 843, 106 S.Ct. 129, 88 L.Ed.2d 106 (1985).

 The Court notes that the decisions of the Comptroller are not unfettered. "The Comptroller must be subordinate to the law from which he received his authority, and is subject to the limitations imposed by that law.... Though he may exercise the discretion the expertise of his office affords him, the congressional grant of authority does not empower arbitrary and capricious action, nor does it contemplate abuses of that discretion." *Bellaire*, 697 F.2d at 680.

 The arbitrary and capricious standard applies to factual controversies. *Seattle Trust & Sav. Bank v. Bank of California, N.A.*, 492 F.2d 48, 50 (9th Cir.), *cert. denied*, 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974). However, when the issue is whether the Comptroller has acted within the limitations imposed upon him by federal and state law, the standard of review is *de novo*. *Id.; Ghiglieri v. Ludwig*, 1996 WL 315947 (N.D.Tex.1996) (citing *Washington ex rel. Edwards v. Heimann*, 633 F.2d 886, 888, n. 1 (9th Cir.1980)) (The district court's review of the Comptroller's decision is a *de novo* determination of the legal issues involved). Both Defendants asserted numerous times, in their briefs and in oral argument, that the courts owe deference to a decision of the OCC pursuant to *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and *Smiley v. Citibank*, —— U.S. ——, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996). This Court agrees with Defendants as to the deferential standard, but notes that "while administrative agencies are expert in technical problems within their jurisdiction, they enjoy no special skill in statutory construction, an area in which the courts are the final authority." *Western Coal Traffic League v. U.S.*, 694 F.2d 378, 383–84 (5th Cir.1982), *on reh'g*, 719

F.2d 772 (5th Cir.1983), *cert. denied*, 466 U.S. 953, 104 S.Ct. 2160, 80 L.Ed.2d 545 (1984).

## STANDARD FOR SUMMARY JUDGMENT

The standard for granting Summary Judgment pursuant to FED.R.CIV.P. 56(c) and the laws of the United States require that there be no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Industr. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994) (*en banc*). Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegation or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.

After a careful review of all available summary judgment evidence, the Court is of the opinion that Plaintiff's Cross–Motion for Summary Judgment should be granted, as Defendants are unable to show that there is a genuine issue of material fact regarding the claims set forth below.

## DISCUSSION

 Defendants first assert that the OCC's approval of Sun World's relocation of its main office to New Mexico was clearly lawful. The Court does not find this point to be in dispute. Under Section 30 of the National Bank Act, a national bank enjoys limited express authority to relocate its main branch.[1] Section 30(b) was amended in 1959 to delete a "within the same state" restriction

---

1. Title 12 U.S.C. § 30(b) reads as follows:
 Any national banking association, upon written notice to the Comptroller of the Currency, may change the location of its main office to any authorized branch location within the limits of the city, town, or village in which it is situated, or, with a vote of shareholders owning two-thirds of the stock of such association for a relocation outside such limits and upon receipt of a certificate of approval from the Comptroller of the Currency, to any other location within or outside the limits of the city, town, or village in which it is located, but not more than thirty miles beyond such limits.

on main office relocations.[2] *McEnteer v. Clarke*, 644 F.Supp. 290, 292 (E.D.Pa.1986). Absent such a restriction, it seems relatively obvious that Sun World's relocation of its main office across the Texas/New Mexico state line was authorized under Section 30(b).

Therefore, the Court finds that the primary issues in this case are: (1) whether there is any authority available under the National Banking Act, either express or implied, which would allow Sun World to retain its Texas branches after relocating its main office to Santa Teresa, New Mexico; and, (2) whether there is any authority available under the National Bank Act which would allow Sun World to establish a "new" branch office at its former main office. This Court is of the opinion that no such authority exists to support either proposition.

### 1. No Implied or Express Authority to Retain Branches

■ In 1994, Congress amended the National Banking Act to include Section 30(c), which specifically deals with the issue of branch retention after a national bank relocates its main office across state lines.[3] Section 30(c) states that a national bank may retain and operate branches within the State from which the bank relocated its main office

only to the extent authorized by Section 36(e)(2).[4]

The passage of Section 30(c) represents the first time that Congress authorized a national bank to retain branches in the former home state in connection with an interstate main office relocation.[5] After May 31, 1997, a national bank may retain branches in its former home state unless a state passes a law specifically prohibiting interstate branches or elects not to "opt in" pursuant to Section 36(g). Therefore, the lawfulness of a national bank's retention of branches after an interstate relocation is dependent on state law. Texas is, at this time, the only state which has not "opted in" pursuant to Section 36(g). *See* TEX.REV.CIV.STAT.ANN. Art. 489f (Vernon Supp.1996). As a result, nothing will change in Texas after the amendments to Sections 30 and 36 become effective on June 1, 1997.[6]

Defendants argue that nothing in Section 30 remotely suggests that a national bank, which has relocated its main office across state lines, is required to divest itself of its existing branches after the relocation. Further, Defendants assert that a national bank under such circumstances enjoys an implied authority to operate branches in the former state as a necessary adjunct to the express authority to relocate the main office. While

2. Amended 1959, Pub.L. No. 86–230, § 3, 73 Stat. 457 (codified as amended at 12 U.S.C. § 30(b) (West Supp.1996)).

3. Amended 1994, Pub.L. No. 103–328, § 102(b)(2), 108 Stat. 2350 (codified as amended at 12 U.S.C. § 30(c)) which reads as follows:
In the case of a national bank which relocates the main office of such bank from 1 State to another State after May 31, 1997, the bank may retain and operate branches within the State from which the bank relocated such office only to the extent authorized in Section 36(e)(2) of this Title.

4. Section 36(e)(2) reads as follows: (emphasis added)
In the case of a national bank which relocates the main office of such bank from 1 State to another State *after May 31, 1997,* the bank may retain and operate branches within the State which was the bank's home State (as defined in subsection (g)(3)(B) of this section) before the relocation of such office only to the extent the bank would be authorized, under this section, or any other provision of law referred to in paragraph (1), to acquire, estab-

lish, or commence to operate a branch in such State if:
(A) the bank had no branches in such State; or
(B) the branch resulted from—
(i) an interstate merger transaction approved pursuant to section 1831u of this title; or
(ii) a transaction after May 31, 1997, pursuant to which the bank received assistance from the Federal Deposit Insurance Corporation under section 1823(c) of this title.

5. The Court notes that the National Bank Act does allow for the retention of branches in two limited situations. *See* 12 U.S.C. §§ 36(b)(1) and 36(b)(2). Neither situation is applicable to the case at bar.

6. The OCC urges that Congress intended an implied recognition of retention of existing branches until May 31, 1997, presumably based upon *the inclusion of a specific date in the future.* This argument lacks merit. The actions of the OCC cannot be justified pursuant to a statute which is not yet effective.

the Court agrees that the plain language of Section 30 does not touch on any divestiture requirement, there exists no implied authority by which a national bank may continue to operate its existing branches after such a relocation of its main office across state lines.

Defendants point the Court to several cases to support their "implied authority" proposition, most notably the Third Circuit Court of Appeals case of *Ramapo Bank v. Camp*, 425 F.2d 333. In *Ramapo*, the court held that Section 30 controls a national bank's main office relocation regardless of the impact of state banking laws. That holding essentially allowed a national bank to relocate its main office *within the same state*, and to retain its former main office as a branch, under circumstances where such an occurrence would have been prohibited by Section 36. The case at bar deals with a national bank association which desires to retain branches in its former home state after relocating its main office *to another state*.

The retention of branches by a national bank which has relocated its main office from one state to another is specifically addressed in the National Bank Act. The plain language of the Act sets forth the method by which branches may be retained under the circumstances involved in this case. This Court finds that Section 30 must be read in conjunction with, and is limited by, Section 36. *See First Nat'l Bank of Southaven v. Camp*, 333 F.Supp. 682 (N.D.Miss.) *aff'd w/out opinion*, 467 F.2d 944 (5th Cir.1972); *Ghiglieri v. Ludwig*, 1996 WL 315947 (N.D.Tex.1996); *National Bank of Marion v. The Van Buren Bank*, 418 F.2d 121 (7th Cir.1969); *Burke v. Ludwig*, Civ. No. 3:96CV0579(AVC) (D.Conn.1996). Neither Section 30 nor Section 36 confer any additional authority to branch or retain branches which is not specified in the statute. In other words, there exists no authority, either express or implied, to support the Defendants' proposition.

**2. No Authority to Establish Former Main Office as a "New" Branch**

■ As noted earlier, this Court is of the opinion that no authority exists which would allow Defendant Sun World to establish a "new" branch at its former main office in El Paso, Texas, after the relocation of the main office to Santa Teresa, New Mexico.

■ The establishment of new branches is governed by 12 U.S.C. § 36(c). Not coincidentally, this is the section on which the Comptroller based his authorization of the establishment of Sun World's former main office as a "new" branch. Section 36(c) allows the establishment of new branches with the approval of the Comptroller:

> ... at any point within the State in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.

12 U.S.C. § 36(c)(2). In other words, a national bank is only permitted to branch to the extent that a state allows branch banking for its own banks. *State v. Clarke*, 690 F.Supp. 573 (W.D.Tex.1988); *First Nat'l Bank v. Walker Bank & Trust Co.*, 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966); *Washington ex rel. Edwards v. Heimann*, 633 F.2d 886, 889 (9th Cir.1980). Federal law determines what constitutes a branch bank, but state law determines when, where, and how a national bank may branch, or if it may branch at all. *Heimann*, 633 F.2d at 889, 890. In deciding whether to approve a national bank's branch application, the Comptroller must consider all relevant state laws and comply with any requirements established by state statutes. *Id.*

Because the Court has already determined that the relocation of Sun World's main office from El Paso, Texas, to Santa Teresa, New Mexico, was proper, the question now is whether a New Mexico bank may branch back to Texas. The answer to that question is no.

Sections 30 and 36 of the National Bank Act must be considered jointly in order to test the good faith nature of the simultaneous

applications to relocate and to branch. *First Nat'l Bank of Southaven v. Camp,* 333 F.Supp. at 689. In *Southaven,* the court stated that competitive equality between national and state banking systems "looks to substance and not form." *Id.* at 690. *See also Jackson v. First Nat'l Bank of Gainesville,* 430 F.2d 1200 (5th Cir.1970), *cert. denied,* 401 U.S. 947, 91 S.Ct. 933, 28 L.Ed.2d 230 (1971). The *Southaven* court further held that the Comptroller would be justified in concluding that "a principal motivation" for relocating the bank's main office was to enable the bank to "accomplish branching under conditions contrary to state law." *Id.* In this instance, the relocation of the main office was proper. However, a New Mexico bank cannot branch back to Texas under either Texas or New Mexico law.

■ Texas law prohibits a New Mexico bank from branching back into Texas. Texas state bank home offices and branches are governed by Tex.Civ.Stat.Ann. art. 342–3.201 *et seq.* (West Supp.1996). Defendant Sun World argues that it is "situated" in Texas by virtue of its branches in Texas, and that Texas clearly grants state banks the authority to establish and maintain a branch office at any location on prior written approval of the banking commissioner.[7] This Court finds these arguments to be without merit. Sun World's relocation of its main office to Santa Teresa, New Mexico, caused it to be "situated" in New Mexico for purposes of Section 36(c). As of the date of the relocation of its main office, Sun World was no longer "situated" in Texas. It follows that Sun World is not a Texas state bank under Article 342–3.201 *et seq.,* and therefore has no authority to establish and maintain a branch at the location of its former main office pursuant to Article 342–3.203.

New Mexico law also prohibits Sun World's actions under these circumstances. New Mexico enacted the Interstate Bank Branching Act, effective as of June 1, 1996.[8] This Act allows New Mexico state banks to establish, maintain and operate one or more branches in a state other than New Mexico pursuant to an interstate merger transaction in which the New Mexico bank is the resulting bank. Interstate branching, either de novo or by acquisition of one or more branches, which does not involve all or substantially all of the assets and branches of a New Mexico bank, is prohibited. *Id.* at § 58–1C–5. Currently, a New Mexico state bank may not acquire branches in Texas. As noted earlier, Sun World is "situated" in New Mexico for purposes of Section 36(c). Once the amendments to Sections 30 and 36 take effect, on June 1, 1997, a New Mexico state bank will still be unable to acquire branches in Texas.

Accordingly, **IT IS HEREBY ORDERED, ADJUDGED** and **DECREED** that Plaintiff's Cross–Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Comptroller of the Currency's Motion for Summary Judgment, and Defendant Sun World's Motion for Summary Judgment, are hereby **DENIED**.

Finally, **IT IS ORDERED** that all other motions presently pending before the Court, which have not been addressed above, are hereby rendered **MOOT** by this Order.

### *JUDGMENT*

Before the Court for consideration are the Motion to Dismiss, or in the Alternative for Summary Judgment submitted by Defendant Eugene A. Ludwig, in his official capacity as the United States Comptroller of the Currency (the "Comptroller"), the Motion for Summary Judgment submitted by Defendant Sun World, National Association, ("Sun World"), and the Cross Motion for Summary Judgment submitted by Plaintiff Catherine A. Ghiglieri, in her official capacity as Texas Banking Commissioner (the "Texas Commissioner"); and the Court having heard oral argument on these various motions on Sep-

---

7. Tex.Civ.Stat.Ann. art. 342–3.203 states, in relevant part:
 A state bank may establish and maintain branch offices at any location on prior written approval of the banking commissioner.

8. N.M. Stat.Ann. §§ 58–1C–1 to –13 (Michie Supp.1996). The Court notes that the effective date of the Act was prior to the date on which Sun World relocated its main office to New Mexico.

tember 5, 1996, from Larry J. Stein on behalf of the Comptroller, E. Edward Bruce, on behalf of Sun World, and D'Ann Johnson, on behalf of the Texas Commissioner; and the Court having reviewed the pleadings of the parties, their respective motions, and the amicus briefs; and the Court having reviewed the administrative record made before the Office of the Comptroller of the Currency and submitted to the Court by the Comptroller; and the Court having considered such additional authorities as it deems pertinent:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED by the Court that:

The Motions to Dismiss, or in the Alternative for Summary Judgment filed by the Comptroller and by Sun World are DENIED;

The Cross Motion for Summary Judgment filed by the Texas Commissioner is GRANTED;

The Comptroller's administrative decision issued on August 2, 1996, (the "Decision"), allowing Sun World to move its main office to New Mexico, to establish its former main office as a new Texas branch, to retain other bank branches in Texas, and thereafter to commence banking operations at a location in Santa Teresa, New Mexico, is SET ASIDE and declared as contrary to law pursuant to 5 U.S.C. § 706(2)(A);

Sun World, its officers, agents, servants, employees and all persons in active concert with them are hereby ENJOINED from, and DIRECTED to immediately cease, conducting banking operations in both the State of New Mexico and the State of Texas, based upon the authority set forth in the Decision, provided that nothing herein shall prevent Sun World from notifying customers that its Santa Teresa, New Mexico, office will cease conducting banking operations and from allowing customers who maintain accounts at such office to enter that office or take other action, within 10 days following the date of this Order, for the purpose of closing or moving their accounts:

The Comptroller, its officers, agents, servants, employees, and all other persons in active concert with them, are hereby ENJOINED from approving any further bank application to relocate the main office of a national bank into or from Texas, where such bank would continue, after such relocation, to own, operate or maintain interstate branches in the former home state, as long as interstate branches violate state law;

The Texas Commissioner may, within 10 days, submit to the Court, in accordance with F.R.C.P. 54(d)(2)(B), an application for recovery of reasonable attorneys' fees incurred in connection with the filing and maintenance of this action.

Court costs other than attorneys' fees are awarded to the Texas Commissioner as provided by F.R.C.P. 54(d)(1).